ISAAC OBERFELDER AND SIMON OBERFELDER, PLAINTIFFS IN ERROR, V. JULIA DORAN, EXECUTRIX OF BERNARD DORAN, DECEASED, DEFENDANT IN ERROR.

[FILED MARCH 27, 1889.]

Injuries to Person. I. and S. O. were the lessees of a large, double store building in which they carried on a wholesale millinery business. To this store building was attached and used by I. and S. O., their employes and customers, in ascending to the second, third, and fourth stories of said building, also in descending to and ascending from the basement thereof, and was also used by said I. and S. O. and their employes in carrying goods into and from the different stories of said building, and empty boxes and other litter from the same, a hydraulic passenger and freight elevator. The beams, upon which rested the axles or journals of the main wheel or pulley, over which ran the cable which sustained the traveler or carriage of said elevator, were composed of pine lumber, which at the date of the cause of action hereinafter mentioned, by reason of dry-rot, in connection with the numerous knots therein, had become and were unsuitable, improper, and unfit for such use. B. D., husband and testator of J. D., was in the employment of I. and S. O., either as their servant or casually employed expressman, and as such was lawfully upon the traveler or carriage of said elevator, when, by reason of the weak, knotted, and rotten condition of said beams, they split, broke, and fell, precipitating

said B. D. to the bottom of the basement of said building, and bringing down upon him the said main wheel or pulley, breaking his legs, and inflicting other injuries upon him, by reason of which he soon afterwards died.    A verdict and judgment for the plaintiff sustained.

ERROR to the district court for Douglas county.    Tried below before HOPEWELL, J.

*Lake & Hamilton*, and *A. J. Poppleton*, for plaintiff in error, cited: *Forsyth v. Hooper*, 11 Allen, 422; *Deforest v. Wright*, 2 Mich. 368; *DeGraff v. N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 131; *Atchison, Topeka & Santa Fé R. R. Co. v. Wagner*, 7 Pacific Reporter, 204; *City of Lincoln v. Walker*, 18 Neb. 245; *Swords v. Edgar*, 59 N. Y. 35; *Staple v. Spring*, 10 Mass. 72; *House v. Metcalf*, 27 Conn. 631; *Nugent v. Boston*, 12 At. Rep. 797.

*J. T. Moriarty*, and *J. C. Cowin*, for defendant in error, cited: Cooley on Torts, pp. 531 and 532; Shearman and Redfield on Negligence, sec. 503; *Bears v. Ambler*, 9 Pa. St. 194; *Leonard v. Storer*, 115 Mass. 86; *Wabash R. R. Co. v. McDaniels*, 107 U. S. 454; *Hough v. R. R. Co.*, 100 Id. 213; *Burke v. Witherbee*, 98 N. Y. 582; Cooley on Torts, p. 727.

COBB, J.

This case is brought to this court on error from the district court of Douglas county.

The defendant in error filed her amended petition in the court below against the plaintiffs in error on January 2, 1888, alleging that on March 25, 1887, her husband, Bernard Doran, died, leaving a will appointing her sole executrix thereof, which will was duly proven, admitted to record, and letters testamentary were issued to her thereon; that she is the mother of Emmett N., aged eight years, Patrick J., aged five years, Martha E., aged three years, and

Bernard M., aged two months, children of her said husband deceased, upon whom she and her said children were wholly dependent for support, and in behalf of whom, as heirs at law and next of kin, she brings this suit; that on March 8, 1887, and for a long time prior thereto, the defendants were lessees of a four story brick building, Nos. 1213 and 1215 Harney street, in Omaha, in said county, and had control and management of the same, and of the elevator used and operated therein, in conducting their business of wholesale milliners and dealers in notions; that said elevator was attached to one end of a cable which passed over a large iron wheel, and was operated by machinery with which the other end of the cable was connected; that said wheel weighed about six hundred pounds, and was supported by wooden beams crossing diagonally from one side to the other of the shaft of the elevator, at a distance of about seventy-five feet above the cellar floor of the building; that it was the duty of the defendants to see that said wooden beams were composed of sound material, kept in good repair, and were of sufficient strength for the purpose for which they were used; but that said wooden beams consisted of four weak, decayed, and rotten, pine boards, each of which was filled with from ten to fifteen knots, and all fastened together with nails and bolts; that the defendants carelessly and negligently permitted said beams to get out of repair by becoming decayed, rotten, and weak, and were of inadequate strength and wholly unfit for the purpose for which they were used, of all of which defects the defendants were at all times informed and had full knowledge, but of which the said Bernard Doran had no knowledge whatever; that on the 8th day of March, 1887, said Doran was, and for a long time prior thereto had been, in the employ of said defendants, and while so employed it was his duty to remove store boxes and other material to and from the cellar floor and the several floors of the building, upon and by means of the said elevator. And while the said Doran was so en-

gaged at said work on said day, in the discharge of his duty, the said wooden beams, by reason of their condition and inadequate strength and general unsuitableness to the purpose used, gave way and broke into two pieces each at the point where the axle of the wheel rested upon them, thereby causing the wheel to fall and be precipitated with force and violence down into the cellar-floor of the building, falling upon and striking both legs of said Doran, breaking and crushing the bones, and bruising, tearing, and mangling the flesh thereof, by reason of which it became necessary to amputate both of his legs, one above the knee and the other immediately below it, which was done on said last mentioned day.   After receiving said injuries, and incurring expenses for surgical aid and nursing to the amount of $200 therefor, and experiencing pain and suffering till the 25th day of March, 1887, said Doran died, by reason of said injuries through the carelessness and negligence of said defendants, by reason of which the plaintiff and her said children have sustained damages to the sum of five thousand dollars, for which she prays judgment.

The answer of the defendants admitted the premises so far as the occupation of the building for the purposes alleged by the plaintiff and that "there was an elevator in the building used for lowering and elevating persons, storeboxes, merchandise, and other material to and from the cellar floors thereof," but specially denied any negligence or carelessness charged against them; and further admitted that said Doran received some injury at the time and place alleged, and died, leaving a widow and three children, as alleged, but denied generally all other allegations of the petition.

There was a trial to a jury with a verdict for the plaintiff, and judgment thereon. The defendant's motion for a new trial having been overruled, the cause is brought to this court on the following assignments of error:

I. In refusing to give instructions to the jury numbered 1, 2, and 6, requested by the defendants.

II. In giving instructions numbered 1, 3, 5, and 6, requested by the plaintiff.

III. In holding that the verdict was supported by sufficient evidence.

The instructions offered by defendants and refused by the court are:

"1. The jury are instructed that the defendants had the right to assume that the elevator in question, when they took the lease from Smith and entered upon their occupancy of the premises, had been constructed of sound material and in a workman-like manner; and even if the jury find from the evidence that the injury complained of was caused by the use of decayed or defective timber in the construction of the elevator, of which the defendants had no knowledge until after the injury, they are not liable in this action.

"2. The jury are further instructed that the defendants had the right to infer when they entered upon and during the occupancy of the building in question, that the elevator therein and its supporting timbers were of suitable dimensions, and sound; and the fact that they did not examine the timbers which finally broke to ascertain their condition in these respects, nor call upon a mechanic or expert to do so, is not evidence of neglect or default on their part."

"6. And even although the jury may believe that an extraordinarily prudent or careful person, under the circumstances surrounding the defendants in their leasing and occupying the premises in question, might or would have made, or have had made by a carpenter or expert, an examination of the timbers supporting the elevator, for the purpose of ascertaining their condition and soundness, still, if ordinarily prudent persons under like circumstances would probably have done substantially as the defendants did, then they are not liable, and the jury should find a verdict in their favor."

Those given which are complained of are :

"1. That the relation of master and servant exists whenever one person, under valuable consideration, engages in the service of another and undertakes to observe his directions in some lawful business. The relation is one of contract, and the parties may stipulate for any kind of lawful service on any lawful condition.

" If, therefore, the jury believe from the evidence that the relation of master and servant existed between the defendants and Bernard Doran at the time he received the injuries complained of; that the injuries so received were caused by and through the carelessness and negligence of defendants ; that said injuries were received while the said Doran was engaged in the discharge of his duties as the servant of the defendants, without fault or negligence on the part of deceased, and that he died by reason of the injuries so received, then, in that case, you will find for the plaintiff."

"3. That it was the duty of the defendants to use reasonable diligence and care to have the elevator and its several parts in a reasonably safe condition for the purposes for which they were used by authority or directions of defendants, and to keep the same in proper repair, so that the elevator might be used by those entitled thereto with a reasonable degree of safety, with proper care and caution and without fault on the part of those using the same; and the defendants are not relieved from this duty from the fact that they may not have personally possessed the skill to determine whether the machinery was reasonably safe, or in reasonably safe repair."

"5. That if they find that the deceased Bernard Doran was properly using the elevator all the time of the accident, and that he came to his death by reason of the injuries received from the falling of the elevator or any of its parts, without fault on his part, and that the timbers which supported the wheels over which the cable passed that operated the elevator car were palpably and plainly insufficient in

strength, of improper and defective material, and the defendants had knowledge of such insufficiency of the timbers and other defects therein, or such insufficiency and defects had existed for such a length of time that by reasonable care and diligence, commensurate with the nature and use of elevator machinery, they could and would have had and possessed such knowledge, and ascertained the condition, and said timbers broke on account of such insufficiency and defects, causing the fall and injuries aforesaid, then, and in that case, the plaintiff is entitled to recover.

"6. The deceased had a right to assume without examination that said elevator and its several parts were in reasonably good condition and repair, and that it was reasonably safe to use the elevator in its proper employment."

The first point of contention by the plaintiffs in error is that the relation of master and servant did not exist between the deceased and themselves. They do not attack the law as given to the jury by the court in the first instruction, asked by the plaintiffs in error.

While, probably, there was evidence by which the jury could find that the relationship of master and servant existed between the deceased and the plaintiffs in error, under the law as given them by the court, and while I believe that the rule thus laid down is correct, I do not think it was necessary that the jury should pass upon that question in order to reach the conclusion which they did; as I do not conceive that an employer owes a higher obligation to his servant regarding the safety and suitableness of the machinery which he is required to operate, or the ways and carriages by which he goes to and from his employment, than is due to other persons not servants or employes, who, upon his invitation, either expressed or implied, may use or be subject to the power and exigencies of his machinery, or may pass over such ways and carriages in pursuance of business, in accordance with invitation.

The next point is briefly stated by counsel as follows:

"In order to have reached the verdict rendered, the jury must have found that the plaintiffs in error were guilty of the negligence charged in the petition.    There is not sufficient proof to establish such negligence, and hence the verdict is not sustained by the evidence."

The petition, after describing the elevator and the manner of its fall, further alleges "that the defendants carelessly and negligently permitted said beams to get out of repair by becoming decayed, rotten, and weak, and were of inadequate strength and wholly unfit for the purpose for which they were used."    It will thus be seen that while it is not admitted by the petition that the beams of the elevator were originally sound, and fitted for the purpose for which they were intended, yet the allegation is, and the chief negligence charged against the defendants was, that they negligently permitted the elevator and its supporting beams to get out of repair by becoming decayed, and rotten, and insufficient for their purpose.

Freight and passenger elevators and like mechanical contrivances for merchandise, factories, and hotels, are of modern use.    Probably less than thirty years ago they were nearly unknown in this country.    This is the first instance, under my observation, in which the question of the liability of the owner or tenants of buildings employing an elevator, to any class of persons suffering injury by the use of it, has been mooted.

The lives and safety of guests at hotels, or the customers and employes of a mercantile store, or factory, where an elevator is now in common use, must, in the very nature of things, constantly depend for safety upon the strength of the machinery, its fastenings and support, and the proper condition in which all parts are preserved, as well as upon the skill and fidelity of those intrusted with their management.    A great degree of responsibility thus necessarily rests upon the builders and owners of houses in constructing and leasing them with this improvement; but more especially is

the responsibility upon tenants to whose business operations it is made an important accessory.

Many of the cases cited by counsel for plaintiffs in error seem to have been brought forward to establish the liability for injuries similar to that at bar upon the landlord and owner of the premises, and not upon the tenant, lessee, and occupant. These cases, especially that of *Swords v. Edgar*, 59 N. Y. 35; *House v. Metcalf*, 27 Conn. 631; *Nugent v. Boston C. & M. R. Corp.*, 12 Atlantic Reporter, 797; are cases where actions were sustained against persons standing in the relation of landlord, and not of tenant or occupant. But I do not think that the premises and the logic of any one of these cases is such as to relieve the tenant or occupant from responsibility, or to establish the proposition that, had the action been brought against him instead of his landlord, it could not have been maintained.

While it will be admitted that the same legal principles will govern a case brought for an injury caused by negligence in failing to keep in repair an elevator operated in a hotel or store, that would apply to an action for injury for failing to keep in repair an engine or other machinery of railway transportation, or by failing to keep in repair the platform, guards, timbers, and supports, of a public wharf, yet, in so far as there may be a difference necessarily growing out of the nature and use of these several kinds of improvements respectively, I think that the greater burden is thrown upon those responsible for the safe construction, good repair, and careful operating of a passenger elevator. The kind of domestic use to which these improvements are applied, the apparently slight risk which presents itself to those who often risk their lives upon the sufficiency of an elevator, and the care with which it is operated in ascending and descending from one floor to another, are calculated to lull into a sense of security, without apprehension, and prevent inquiry and examination of the guest or customer into the construction, the condition, or the material, of such

machinery. Indeed, it may be said that all persons at hotels, stores, or buildings, using elevators, if they do not "take their lives in their hands," they constantly intrust them to the fidelity and skill of the constructer and attendant of such machinery; and it may be answered that a like risk is involved in regard to our use of all the complex conveniences of life. That such is true, to a considerable extent, is granted, but I know of no important experiment to save bodily labor and fatigue upon which the daily safety of individual life depends, and is so much endangered, as that of the passenger elevator. And so it will be readily admitted that a rule of law would be objectionable which fails to designate the person or persons in every case whose duty it shall be to exercise proper care and bear the responsibility for the construction, preservation, and management, of all passenger elevators to the use of which the public are invited.

While I would not say that where a man who erects a building with an elevator negligently allows it to be unsafely constructed, and afterward lets it to a tenant, and while the same is so occupied, a servant, customer, or guest, or one of the general public, who has been expressly or impliedly invited to its use, is injured, without contributory negligence on his part, by reason of the unskillful construction or improper material of such elevator, an action for damages for such injury would not lie against the constructer or landlord, yet I do hold that, in many, if not in most cases, it would amount to a denial of justice to establish a principle or rule of law that would confine and limit the remedy to an action against the builder or landlord. And I think that in the very nature of things such injured person has a cause of action against the person who controls the premises and profits by the business of which the elevator is a component part and accessory.

In the case at bar, the plaintiff introduced in evidence the contract lease of the premises from George Warren

Smith, the owner, to the defendants, by which it appears
that the defendants were by the terms of their lease to keep
the premises, and especially the hydraulic elevator and all
its connections, machinery, and pipes, in good order and
state of repair, and free from all obstruction.

This evidence obviates the necessity of the discussion of
the question of the direct primary liability of defendants,
in case there be liability upon any one, for an injury sus-
tained by reason of the defective state of repair of the
elevator in question.    And it appears that the authority of
the cases cited by the defendants in error in the brief, and
especially that of *Burdick v. Cheadel*, 26 O. St. 395, estab-
lishes such liability of the defendants, for damages sustained
by reason of the faulty and imperfect original construc-
tion of the machinery.

Upon the trial, three pieces of timber were offered and
received in evidence, marked Exhibits Nos. 1, 2, and 3,
and were examined and considered by the jury in making
up their verdict.    They were attached to and made a part
of the bill of exceptions, were exhibited to the court, and
commented upon by counsel in their argument of the case.
These pieces of timber were identified on the trial by wit-
nesses O'Donnovan, O'Keef, and Jenkins, (and their evi-
dence was not denied,) as being part of the beams upon
which rested the boxes and journals of the wheel upon
which ran the cable bearing the weight of the traveler or
carriage of the elevator, and its passengers and freight.
The evidence of these witnesses tended to prove that the
beams were constructed of an improper material, that the
timber was unsound by reason of natural knots which
increased its liability to split and break, and that whatever
may have been the condition of the lumber composing the
beams when constructed, it was, at the time of the accident
and injury to the deceased, utterly unfit for the purpose
for which it was used, by reason of dry-rot and decay.

This evidence was fully corroborated by the examination

of the timbers by the jury as well as by this court. The evidence and the examination tended also to prove that the faulty character of the beams, and their unsafe condition, shortly before the injury, were such that the true condition should have been detected by the inspection of a competent person.

It also tended to prove that such faulty condition of the beams "had existed for such a length of time, that by reasonable care and diligence on the part of defendants, commensurate with the use of the elevator machinery, they could and would have had and possessed such knowledge and ascertained the condition" of said timbers.

The verdict of the jury is therefore sustained by the evidence, and by the fifth instruction as given by the court at the request of plaintiff in the court below.

I cannot agree with counsel in their contention that the defendants were not obliged to make a proper examination and inspection of the timbers of said machinery from time to time, to ascertain whether they were still safe and sufficient to do their work; but, on the contrary, am obliged to insist that it was their duty to make such inspection, whether the defects which led to the injury and loss of life were in the original construction, or whether incidental at a later period.

And, as above stated, there being evidence sufficient for the jury to find that the faulty character of these timbers was such that a proper inspection would have disclosed the same, it appears unnecessary to pass upon the question as to whether their duty to make such inspection would exist only where it is shown that such inspection would have revealed the defects.

No special objection being made in the brief, to the instructions, other than the fifth, as set forth, they will not be further considered than to say that they appear to be in the line of judicial safety, and fairly within that of approved public policy, which must control such semi-public

improvements as that here involved, and that they meet our entire approbation.

In the case of *The City of Lincoln v. Walker*, 18 Neb. 244, cited by counsel for the plaintiffs in error, it was held that, "in an action for negligence, where the plaintiff can prove his case without disclosing any negligence on his part, contributory negligence is a matter of defense, the burden of proving it being on the defendant." Applying this rule of law to the case at bar, I understand it to mean that the plaintiff being able to prove the injury and loss to her testator, by reason of the negligence of defendants, without disclosing any contributory negligence on the part of her testator, she may leave the whole question of contributory negligence to the pleadings and proofs of the defendants, as they shall be advised, and need not enter upon the negative task of disproving any possible negligence on the part of the testator; and as there are neither pleadings nor proof as to his contributory negligence, that question is not presented to be further considered.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.