OMAHA STREET RAILWAY COMPANY V. JOHN DUVALL.

FILED APRIL 3, 1894.    NO. 5520.

1. **Street Railways:** PERSONAL INJURIES: NEGLIGENCE: IN-
STRUCTIONS. An instruction that if the motorman in charge
of a street car could, in the exercise of reasonable care, have
seen the plaintiff in time to have checked his car after plaintiff's
horse sprang upon the track and before the car collided with
plaintiff's horse, and that if plaintiff was not guilty of negli-
gence which contributed to his injury, then the defendant would
be liable, *held*, properly given, qualified as it was by an immedi-
ately preceding instruction, that if the injury resulted from the
sudden fright of plaintiff's horse, by reason of which said horse
sprang in front of the moving car, and that if the motorman in
the exercise of reasonable care could not have checked the car in
time to have prevented the collision, the defendant would not be
liable; these alternatives presenting as they did the only dis-
puted propositions of fact involved.

2. ———: ———: ———: ———. As applied to the liability of
street railway companies whose cars are propelled by means of
electricity, the following instruction was proper: "The violation
of any statutory or valid municipal regulation, established for
the purpose of protecting persons or property from injury, is of
itself sufficient to prove such a breach of duty as will sustain a
private action for negligence, if the other elements of actionable
negligence concur. Thus, the violation of the statutes or ordi-
nances regulating the speed of vehicles, horses, or trains or street
cars is such a breach of duty as may be made the foundation of
an action by any person belonging to the class intended to be
protected by such regulation, provided he is specially injured
thereby."

3. ———: ———: ———. Street railway companies have no such
proprietary interest in that portion of the streets upon which
their tracks are laid as limits the right of the general public also
to use the same territory as a part of the public highway.
Whether an injury resulting from such joint use is attributable
solely to the negligence of the railway company, or is wholly or
in part imputable to contributory negligence of the person by
whom injury has been sustained, is a question of fact to be de-
termined by the jury.

ERROR from the district court of Douglas county. Tried below before DOANE, J.

*John L. Webster*, for plaintiff in error.

*Lee S. Estelle, Crow, Johnson & Cooper, contra.*

RYAN, C.

This action was begun in the district court of Douglas county by the defendant in error, for the recovery of damages alleged to have been inflicted by an electric motor car negligently operated by the agents of plaintiff in error. In consequence of the negligence alleged the defendant in error averred that the aforesaid car ran against the horse on which he was riding in the streets of the city of Omaha with such force as to throw the defendant in error upon the pavement with such violence as to produce concussion of his brain and spine, whereby it resulted that the defendant in error became so insane that he was of necessity confined in the hospital for the insane of this state from some time in March, 1890, until June 17 immediately following. There were other averments as to the nature and extent of the injuries suffered, which need not be reviewed at length, for plaintiff in error in its brief concedes that the amount of damages is not in question, provided the defendant in error was entitled to recover. Issue was duly joined upon the averments of the petition and on a trial had there was a verdict and judgment for $4,330. There was evidence introduced showing that on March 19, 1890, John Duvall (plaintiff in the district court) was riding his horse northward on that portion of Twenty-fourth street which lies on the east side of, and along the street car line on, said Twenty-fourth street at about the intersection of that street with Parker street, when plaintiff's horse became suddenly frightened and jumped upon the nearest track of the defendant; that on the farther track there was moving

from the north a train of the defendant which left no safe way of escape for plaintiff but by moving to the right with his horse; that though plaintiff's horse was ordinarily manageable, at this particular time he refused to turn to the right and leave the street railway track upon which he had jumped; that there was then at a distance of about one hundred and twenty-five feet, moving towards plaintiff at rate of speed of about twelve miles per hour, from the south, along said track last referred to, a car under the control of the employes of the defendant, by whom, with ordinary care, the dangerous situation of plaintiff could have been seen in time to have avoided a collision with him and his horse. There was evidence also that the motorman who had control of the movements of the said last-mentioned car was, at the particular time last referred to, engaged in noting the speed of a bicycle which was keeping pace with the advance of the said car, rather than keeping a lookout for objects upon the track in front of the car of which he had management, and that owing to his said inattention and the great speed with which said car was moving, it resulted that the said car struck plaintiff's horse and caused the injury as described in the petition. There was introduced in evidence an ordinance of the city of Omaha which prohibited the running of street cars in said city at a speed greater than eight miles per hour. There was sufficient evidence to justify a finding that the motor last above referred to, followed by a trailer, was moving at the rate of twelve miles per hour when the accident happened, and there was evidence to justify a contrary conclusion. The same observation is applicable to the claim that the motorman was otherwise engaged than in observing whether or not there was danger ahead, either to the cars under his charge or to individuals on the track in front of him. No review of the evidence will therefore be necessary, for the verdict is sufficiently supported by proofs as to every essential to sustain a recovery under the rule announced in

*City of Lincoln v. Gillilan,* 18 Neb., 114. The consideration of this case is, therefore, limited to such questions as arise upon the instructions given and refused.

In the first instruction given by the court the question to be first determined by the jury was stated to be whether or not the injury of which complaint was made was the result of negligence on the part of the defendant, its agents or employes. In respect to this order of inquiry, counsel for plaintiff in error insists that logically the inquiry should have been, first, as to the question of contributory negligence on the part of the plaintiff, and that then would follow the consideration of the question of negligence on the part of the street railway company, employes, and agents. From the standpoint of corporations of this character the relative importance of contributory negligence as defeating a recovery and such negligence as would entitle to a recovery, is usually insisted upon in this order. We are at a loss to conjecture why contributory negligence as a question of fact should be considered as of more importance than the negligence upon which the recovery is sought to be predicated. It seems to us that the order prescribed by the trial court for the consideration of these questions was the more logical, for, if plaintiff could show such negligence as caused his injuries without thereby disclosing contributory negligence on his part, he was entitled to recover (*City of Lincoln v. Walker,* 18 Neb., 244); and in the event that his own evidence disclosed no negligence on his part, he was not bound to disprove its existence. (*Oberfelder v. Doran,* 26 Neb., 118. It might be in the trial of these questions of fact that the jury would find that plaintiff's evidence entitled him to avail himself of the above rule, from which it might result that there would be no room or occasion for the consideration of the question of contributory negligence on his own part. Possibly the jury might not have been misled if the trial court had required the consideration of these questions in the order in which plaintiff in error insists

that they should have been presented to the jury. It seems to us, however, that the more natural and logical order of examination was as given by the instruction of which complaint is made.

Plaintiff in error argues that the fifth instruction given by the court declared the street railway company liable if the motorman could in the exercise of reasonable care have seen the plaintiff in time to have checked the car after plaintiff's horse sprang upon the track. The unsubstantial nature of this criticism is best exposed by quoting the instruction complained of conjunctively with that which preceded it, the connection between the two being suggested by the language with which the fifth instruction began. These instructions were as follows:

"4. If you find from the testimony that the injury to the plaintiff resulted from the sudden fright of plaintiff's horse from which he sprang in front of the moving car, and that the motorman in charge of the car could not in the exercise of reasonable care have checked the progress of the car in time to have prevented the collision with plaintiff's horse, then and in that case the defendant could not be charged with negligence and would not be liable for the injuries to the plaintiff in this action.

"5. If, however, you find from the testimony that the motorman in charge of the car could in the exercise of reasonable care have seen the plaintiff in time to have checked his car after plaintiff's horse sprang upon the track and before the car collided with his horse, and that the plaintiff was not himself guilty of negligence which contributed to his injury, then the defendant would be liable."

Instruction No. 1, asked by the plaintiff and given, was in the following language: "The violation of any statutory or valid municipal regulation, established for the purpose of protecting persons or property from injury, is of itself sufficient to prove such a breach of duty as will sustain a private action for negligence, if the other elements

of actionable negligence concur. Thus, the violation of the statutes or ordinances regulating the speed of vehicles, horses, trains, or street cars is such a breach of duty as may be made the foundation of an action by any person belonging to the class intended to be protected by such regulation, provided he is specially injured thereby." This instruction will be considered in connection with the seventh instruction asked by the defendant and refused, which was in the following language: "The jury are instructed that it was the duty of the plaintiff to keep himself and horse out of the way of the approaching train, and if he failed in that duty and allowed his horse to jump upon the track immediately in front of the northward bound train and in such close proximity thereto that the train could not be brought to a stop by the use of proper care before it collided with him, then the plaintiff has not made out his case and your verdict should be for the defendant."

Street railways are constructed and operated on public highways under grants of that right by municipal corporations. The grant is of a privilege to occupy and use these streets in conjunction with, and not to the exclusion of, the general public. It is therefore but right that the city by general ordinances shall provide restrictions and regulations under which the franchise granted must be exercised. In the city of Omaha the ordinance introduced in evidence prescribed that no street car should move over the streets at a greater rate of speed than eight miles per hour. This restriction has for its main purpose the prevention of collisions between street cars and individuals, animals, or vehicles. In argument it was insisted on behalf of the street railway company that the defendant was not a skilled horseman. There has never been any requirement, statutory or otherwise, that to a use of the streets a certain degree of skill in the management of horses is an essential prerequisite. These highways are for the use of the general public, and their use by street railway companies is tolerated not for

the purpose of encouraging monopolies, but to facilitate
travel by improved methods of locomotion. The street
railway companies obtain no exclusive proprietary rights
in the streets by the franchises granted them. They only
secure thereby the privilege of traversing the streets with
such natural or mechanical means of propulsion as shall
best subserve the interests of its patrons. The appropria-
tion of the streets for any other purpose would be foreign
to the use to which they were dedicated, and could not be
sanctioned by municipal authority. If, therefore, the
privilege granted is exercised in a manner forbidden by
ordinances enacted for the safety of the general public, and
injuries result, these facts afford reasonable grounds for in-
ferring negligence prejudicial to the rights of those in whose
interests and for whose protection such municipal regula-
tions were adopted. (See *Mueller v. Milwaukee Street R.
Co.*, 56 N. W. Rep. [Wis.], 914, and cases cited.) These
principles were embodied in instruction No. 1, requested
by plaintiff, and that instruction was, therefore, properly
given. To have instructed as was requested in the seventh
instruction asked by the defendant would have been little
if anything short of an outrage. This instruction opened
with the proposition that " it was the duty of the plaintiff
to keep himself and his horse out of the way of an ap-
proaching train," etc. This instruction assumes that the
street railway company was the owner and entitled to the
exclusive use of such portions of the streets as were occu-
pied by its railway tracks. While street cars were drawn
by animals, there was something of a chance for the occu-
pant of a vehicle dependent on like means of locomotion,
and the danger of injury by collision was much less than
at present. In the propulsion of street cars, however, such
advances have been made that the use of horse power is
practically obsolete. Instead, there have been substituted
the most powerful agencies known, and either steam, by
means of cables, or directly applied, or electricity gives

speed and irresistibility to the progress of modern street cars. In the ordinance to which reference has been made, the right to move at the rate of eight miles per hour along the crowded thoroughfares of a populous city is accorded to these powerfully equipped and dangerous vehicles. Such a rate of speed was impossible to horse cars. It is now the ordinary rate fixed—very liable at any time to be transcended at the pleasure of an irresponsible motorman. In the management of these powerful agencies there is a subserviency to the will of the agent in charge of the car, which, in the nature of things, could not exist when horses were the necessary means of propulsion. The public must depend almost entirely upon the watchful care of the motorman, and his absolute control of the machinery by which his car is impelled forward, as measuring the ability of these public vehicles to avoid the infliction of injury. There is great reason, therefore, for requiring the exercise of the utmost skill and watchfulness on the part of this agent as well as of other employes of street railway companies to avoid collision with individuals equally entitled to the use of these public highways. The change which we have noted in the methods of propulsion of street cars, and the dangers incident thereto, constitute a powerful argument for the strict application and enforcement of the principles which have been recognized as measuring the liability of street railway companies, in *Omaha Street R. Co. v. Craig*, 39 Neb., 601, filed at this term, and in *Lincoln Rapid Transit Co. v. Nichols*, 37 Neb., 332.

The judgment of the district court is

AFFIRMED.

POST, J., not sitting.