## DALLAS RY. & TERMINAL CO. v. BANKSTON.

No. 1554—5881.

Commission of Appeals of Texas, Section A.
June 9, 1932.

Worsham, Rollins, Burford, Ryburn & Hincks, of Dallas, for plaintiff in error.

J. Hart Willis and J. W. Madden, Jr., both of Dallas, for defendant in error.

SHARP, J.

W. H. Bankston filed this suit in the district court of Dallas county against Dallas Railway & Terminal Company to recover for personal injuries and for the destruction of his automobile in which he and two others were riding at the time of the injury. Plaintiff based his cause of action, in part, from alleged violation of certain ordinances of the city of Dallas and, in part, on negligence arising from the alleged breach by defendant of its common-law duty to exercise due care.

The case was submitted to the jury upon special issues. In answer to the special issues submitted, the jury found: (1) That the defendant's motorman failed to keep a vigilant watch for plaintiff's automobile; (2) that the motorman failed to stop the car in the shortest time and space possible after the plaintiff's danger became apparent; (3) that the defendant failed to keep the space between its track and rails and two feet on each side level with the balance of the street; and (4) that these failures were each a proximate cause of plaintiff's damage.

The findings of the jury on issues with respect to negligence arising from the alleged breach by defendant of its common-law duty are as follows: (a) That the rate of speed the street car was being operated at the time of the collision was negligence; (b) that the motorman operating the car discovered plaintiff's perilous position in time by the exercise of ordinary care, which he failed to exercise, to have prevented the collision; (c) that the motorman negligently failed to keep a lookout; (d) that the motorman just prior to the collision negligently abandoned the portion of the car where the control appliances were located; (e) that he also negligently failed to apply the brakes; and (f) that each of the said acts of negligence was the proximate cause of plaintiff's damage. All issues of negligence on the part of plaintiff were found in his favor.

By virtue of these findings judgment was rendered by the trial court for plaintiff in the sum of $3,475, but before an appeal was perfected a remittitur of $1,192.05 was filed reducing the judgment to $2,282.95. An appeal was made to the Court of Civil Appeals at Dallas, and the judgment of the trial court was affirmed. 33 S.W.(2d) 500. A writ of error was granted.

Plaintiff in error attacks the validity of article 1881 of the ordinances of the city of Dallas which required the motorman of each car to keep a "vigilant watch" for all vehicles either on the track or moving toward it, and on the first appearance of danger to such vehicles the car should be stopped "in the shortest time and space possible," because such terms are vague, indefinite, and not sufficiently definite and certain to authorize a prosecution for violation thereof. The pertinent part of article 1881 of the ordinances involved here reads as follows: "The motorman of each car shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible."

Both the Constitution and statutes of this state give a city the right to protect the life and property of its citizens by regulating the use of its streets by street railway companies and others. Section 5, article 11, Constitution of Texas; article 1175, R. S. 1925. In harmony with section 5, article 11, of the Constitution, the Legislature enacted chapter 13, article 1165 et seq., R. S. 1925, known as the Home Rule Statute. Subdivision 12 of this article (article 1175) authorizes the city to prohibit the use of any street of the city by any street railway, interurban railway, or any other character of public utility without first obtaining the consent of the governing authorities, and upon such condition as may be provided by such ordinances. Subdivision 16 also gives the city the exclusive dominion,

control, and jurisdiction in, over, and under the public streets, and to provide for the improvement of any public street or paving, raising, grading, filling, or otherwise improving the same and to charge the cost of making such improvement against the abutting property, and further provides that all street railways or other railways should pay the cost of improving said street between the rails and tracks of any such railway company, and two feet on each side thereof.

Article 1892 of the city ordinances, in part, reads: "All street railroad companies shall be required to keep level with the balance of the street the space between their rails and tracks, and two feet on each side of same, with similar material to that with which the balance of the street on which the same are situated shall be repaired or improved, and they shall have the tops of the rails of their tracks on a level with the surface of the streets, and they shall keep their tracks in repair and according to the street grade; and they shall keep any culverts constructed by them in repair and in good condition, as likewise any part between their rails and tracks. * * *"

Article 1893 also, in part, reads: "That any person, corporation, company or co-partnership operating a street railroad in the City of Dallas, or any track running through any portion of the City of Dallas, shall be liable for all damages which may be sustained by any person or property by reason of the violation or non-compliance of such person, corporation, company or co-partnership with the provisions of the preceding article, or by reason of the failure of such person, corporation, company or co-partnership to keep such railroad in proper repair or by reason of the negligent operation or maintenance of such street railroad, or by reason of the carelessness, negligence or misconduct, of any of their agents or servants. * * *"

■■ The enactment of articles 1881, 1892, and 1893 of the ordinances of the city of Dallas evidently was for the purpose to promote the safety of travel on the streets. The subject-matter was clearly within the power of the city, and the ordinances are plain and specific. The language used within the ordinances is simple, and is commonly used by cities in connection with such matters. The outstanding purpose of the ordinances was for the safety of the public from injury through the operation of street cars upon the streets. Modern conditions demand that municipalities must of necessity be permitted reasonable latitude in the exercise of their police powers. The authorities sustain the view that the powers given cities are broad enough to authorize the enactment of ordinances and rules regulating traffic upon public streets, and to impose reasonable restraints to protect the welfare of the public in the proper use of the streets.

Although an ordinance regulating the operation of street cars requiring that the motorman keep a "vigilant watch" and stop the car "in the shortest time and space possible," having regard for the traffic and use of the streets, establishes a rule of conduct which is not greatly different from the rule of ordinary care, and, while it may be too uncertain and indefinite in its terms to be capable of enforcement by a criminal prosecution, it is not too indefinite to furnish a rule of civil conduct. Recently this section of the commission passed upon the validity of articles 790, 794, and 799 of the Penal Code, which involved the question of "adequate brakes," and providing that no person shall drive a motor or other vehicle upon the highways of the state "at such rate of speed as to endanger the life or limb of any person or the safety of any property." The foregoing articles provided for a penalty for violation thereof. It was held that the foregoing articles of the Penal Code were valid in so far as they were sufficient to furnish a rule of civil conduct. Both state and federal authorities construing similar laws, involving analogous principles, were reviewed. H. & T. C. R. R. Co. v. Stevenson (Tex. Com. App.) 29 S.W.(2d) 995; West Texas Coaches v. Madi (Tex. Com. App.) 26 S.W.(2d) 199; 42 C. J. p. 631.

It is further contended that article 1881 of the ordinances involved here is invalid because the city of Dallas possesses only such powers as are delegated by the Constitution and statutes, and the rule is recognized that no charter or any ordinance passed thereunder shall contain any provision inconsistent with the Constitution or the general laws enacted by the Legislature; that as the common law which is adopted in this state (R. S. 1925, art. 1) in the absence of legislation upon the subject-matter furnishes the rule of decision, and liability, if at all, must rest upon the failure to exercise ordinary care; that no absolute duty rested upon the motorman to keep a vigilant watch or to stop the car in the shortest time and space possible, or was he required to do more than to exercise ordinary care under the circumstances. Therefore, the ordinance, being in conflict with the common law in these respects, is void.

■ The Constitution and statutes confer upon the cities of this state authority to regulate the use of streets. The city of Dallas has availed itself of that power and enacted ordinances regulating the operation of street cars and other vehicles thereon. It has the power to enact reasonable rules not only for the control of the cars, but also to require the company to pave the space between the tracks and two feet on each side with material similar to that used in paving the streets, and to maintain the track rails on a level with the surface. See McQuillin's Municipal Corporations (2d Ed.) § 1011, and authorities collated thereunder; Worster v. 42nd Street

Ry. Co., 50 N. Y. 203; Cline v. Crescent City Ry. Co., 41 La. Ann. 1031, 6 So. 851; Memphis, P. P. & B. Railway Co. v. State, 87 Tenn. 746, 11 S. W. 946; Keitel v. St. Louis, etc., Ry. Co., 28 Mo. App. 657; Griveaud v. St. Louis, etc., Ry. Co., 33 Mo. App. 458; Mayor of Troy v. Troy & L. Ry. Co., 3 Lans. (N. Y.) 270; City of Brooklyn v. Brooklyn City Ry. Co., 47 N. Y. 475, 7 Am. Rep. 469; McMahon v. Second Ave. Ry. Co., 75 N. Y. 231.

■ Because the ordinance requires the motorman to keep a vigilant watch for persons does not render it invalid. The ordinance does not exact a higher degree of diligence and care than the common-law rule of ordinary care. The meaning of the common-law rule of ordinary care is elastic enough to meet all emergencies. It may mean the exercise of ordinary care at a place where few people are expected, and it may mean a vigilant watch where traffic is congested and danger imminent. Because the quantum of care is more exacting at one place than it is at another, although the degree of care is the same at both places, does not destroy or conflict with the rule prescribed by the term "ordinary care." The amount of care depends upon the exigency that confronts the motorman. It may require that he do one thing at one place and something else at another place. Therefore, there is no conflict in the degree of care to be exercised by the motorman, as provided for in the language of the foregoing ordinance, than that required by the common-law rule of ordinary care; that care which a person of ordinary prudence would exercise under like circumstances. San Antonio Street Ry. Co. v. Mechler, 87 Tex. 628, 30 S. W. 899, 900; Galveston City Railway Co. v. Hewitt, 67 Tex. 480, 3 S. W. 705, 60 Am. Rep. 32; Ft. Worth & R. G. Ry. Co. v. Bowen, 95 Tex. 364, 67 S. W. 408. Judge Brown in rendering the opinion in the case of Railway Co. v. Mechler, supra, said: "Persons engaged in operating street cars must use ordinary care to see that the track is clear, and to avoid collisions with persons and vehicles that may be upon the track or upon the street. This rule is well expressed by the supreme court of Missouri thus: 'It is the duty of the defendant's servants to be on the lookout, and to take all reasonable measures to avoid injuries to persons who may be upon the streets. The duty to be on the watch is no more than ordinary care, under such circumstances. The care to be used, to be ordinary care, must depend upon the surrounding circumstances.' Winters v. Cable Railway, 99 Mo. 517, 12 S. W. 652 [6 L. R. A. 536, 17 Am. St. Rep. 591]. The person operating the car must exercise that amount of vigilance that a man of ordinary prudence would have exercised under the same circumstances. This may, under some conditions, require the use of every available means to avoid the injury; but it is, after all, ordinary

care, in degree, because a man of ordinary prudence, under like conditions, would do the same thing. Yet it might be the utmost care, gence, because the particular circumstances demanded that much."

The case of Railway v. Bowen, supra, involved a certified question, which reads as follows: "We deem it advisable to certify to your honors for decision the question so raised, and which is thus stated in the second proposition under the thirty-fourth assignment of error: 'It was error to instruct the jury that the defendant was liable if the conductor failed to use "all reasonable efforts at his command to avert the injury." The rule is that the conductor shall use ordinary care to avert the injury.' "

In answer thereto, the Supreme Court said: " * * * The charge did not place upon the defendant any greater burden than is prescribed by law, for the jury undoubtedly understood from the use of the language 'reasonable effort' that the law required the conductor to make such exertion to prevent the injury as a reasonably prudent man would under like circumstances. We are of opinion that the charge would not have been more favorable to the defendant if the qualification that it desired had been added, for it is manifest that any man of ordinary prudence would, under like conditions, use 'all reasonable efforts at his command' to save the life of a fellow man."

For a discussion of ordinances containing such terms as "vigilant watch" and similar terms to those used in this ordinance, we refer to the following authorities: Hays v. Gainesville Ry. Co., 70 Tex. 602, 8 S. W. 491, 8 Am. St. Rep. 624; Dallas Ry. Co. v. Hurley, 10 Tex. Civ. App. 246, 31 S. W. 73 (writ denied); sections 1010 and 1011, McQuillin's Municipal Corporations, Second Edition, Volume 3, and authorities collated; Memphis Street Railway Co. v. Haynes, 112 Tenn. 712, 81 S. W. 374; Driscoll v. Market, etc., Co., 97 Cal. 553, 32 P. 591, 592, 33 Am. St. Rep. 203; Osborne v. McMasters, 40 Minn. 103, 41 N. W. 543, 12 Am. St. Rep. 698; Omaha St. Ry. Co. v. Duvall, 40 Neb. 29, 58 N. W. 531; Meyers v. St. Louis, etc., Co., 99 Mo. App. 363, 73 S. W. 379; Sepetowski v. St. Louis, etc., Co., 102 Mo. App. 110, 76 S. W. 693, 696; Sluder v. St. Louis, etc., Co., 189 Mo. 107, 88 S. W. 648, 5 L. R. A. (N. S.) 186; State ex rel. Vogt v. Reynolds, 295 Mo. 375, 244 S. W. 929; Grossman v. Wells, 314 Mo. 158, 282 S. W. 710, 714.

■ That part of the foregoing ordinance which requires the motorman to keep a vigilant watch for vehicles or persons on or near the track and on the first appearance of danger to same that the car should be stopped "in the shortest time and space possible" should be considered in connection with an-

other well-recognized rule which imposes upon a carrier of passengers the degree of care that is "required by the exercise of such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them, as would be used by very cautious, prudent, and competent persons under similar circumstances." International & G. N. Ry. Co. v. Halloren, 53 Tex. 46, 37 Am. Rep. 744; Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183; Wichita Valley Ry. Co. v. Williams, 116 Tex. 253, 288 S. W. 425.

An abstract or literal application of that part of the ordinance just quoted would conflict with the rule stated above if the street car carried passengers. In submitting special issues upon this question, that part of the ordinance should be submitted in the light of the rule due passengers by the carrier and in connection with the issue whether the motorman in the exercise of ordinary care in applying and using all the means at hand failed to stop the car in the shortest time and space possible consistent with the safety of the street car and the passengers thereon. San Antonio & A. P. Railway Co. v. McMillan, 100 Tex. 562, 102 S. W. 103; Texas & P. Railway Co. v. Breadow, 90 Tex. 26, 36 S. W. 410.

Since this case will be reversed and remanded on other grounds, we call attention to the fact that while the trial court did submit special issues Nos. 8 and 9 with reference to discovered peril in the light of the foregoing rule, special issue No. 4, which referred to the primary negligence of plaintiff in error, in that the motorman failed to stop the car "in the shortest time and space possible," was not submitted in that manner. In another trial this issue should be submitted in connection with the rule announced by our Supreme Court in the foregoing cases.

■ Of course, if the pleadings and the evidence raise the issue of discovered peril and the jury finds upon that issue in favor of the injured party, the issues of primary negligence and contributory negligence become immaterial. However, if the jury should find against the injured party upon the issue of discovered peril, that would not remove from the case the issues of primary negligence and contributory negligence. The rule is now well established that, where the defendant discovers the peril of the plaintiff in time to avoid injury by the exercise of ordinary care in the use of means at hand consistent with the safety of others, a new duty arises to exercise such care, and failure to do so creates liability, regardless of the original cause of plaintiff's perilous condition. Hines v. Foreman (Tex. Com. App.) 243 S. W. 479; Hays v. Ry. Co., 70 Tex. 602, 8 S. W. 491, 8 Am. St. Rep. 624; Baker v. Shafter (Tex. Com. App.) 231 S. W. 349; St. Louis South-western Ry. Co. of Texas v. Cambron, 62 Tex. Civ. App. 465, 131 S. W. 1130; St. Louis, B. & M. Ry. Co. v. Cole (Tex. Com. App.) 14 S.W.(2d) 1024.

■ The objections to the validity of the foregoing ordinances are overruled.

Plaintiff in error raises the point that the verdict and judgment are without competent evidence to sustain them, in that it allows a recovery of $975 for damages to defendant in error's automobile, as disclosed by the answer of the jury to special issue No. 23, when there was no competent evidence as to market value of same at Dallas, either before or after the collision, or any competent evidence of a legal measure of damages to the automobile, and therefore the verdict and judgment in such respect are not supported by the evidence.

The testimony upon this question is meager. Defendant in error alleged that the automobile was of the reasonable value of $1,400 prior to the collision, and that it was totally demolished. In support of this issue he testified: "I am familiar with the value of cars of that kind. It was a 1928 Oakland Coupé and I believe I am familiar with the value of that kind of a car. They offered me $1,050 'trade in' for this car on a new automobile. The car was a total wreck. I got $75 for it." Another witness, by the name of Hanna, testified that he saw the automobile after the collision and that it was totally demolished. A photograph was also introduced showing that the car, as a vehicle, was destroyed. The trial court submitted the following special issue:

"Special Issue No. 23: What was the difference in the market value of plaintiff's automobile prior to the said collision and the market value, if any, of same just after the collision?

"Answer in dollars and cents."

The jury answered $975.

The jury also found in answer to issue No. 21 that the sum of $2,500 would reasonably compensate defendant in error for reasonable value of hospital, nurses', and doctors' bills he had incurred in the past, and will incur in the future as directly and proximately caused by the injuries sustained by him.

Special issue No. 22, in substance, submitted to the jury what sum of money will compensate defendant in error for the physical pain, etc., that he had sustained in the past and would sustain in the future, and also for his diminished capacity to earn money in the past or in the future, and the jury answered nothing.

It will be seen that the amount found by the jury in favor of defendant in error aggregated the sum of $3,475, for which amount judgment was entered. Subsequent to the

entry of judgment for that amount, defendant in error filed a remittitur in the sum of $1,192.05. Defendant in error in his brief in discussing the reasons for the remittitur said: "Because of the failure to plead sufficient doctor bills appellee was required to file a remittitur of $1,192.05." There was no objection to the testimony with respect to the value of the automobile when introduced. However, before special issue No. 23 was submitted to the jury, plaintiff in error, in a timely and proper manner, objected to the submission of this issue, because there were no sufficient pleadings or evidence authorizing the submission of that issue to the jury.

■■ The rule is now well settled in this state that where evidence in itself is wholly incompetent, such testimony should be given no probative force. The admission of such testimony without objection gives it no vitality. Therefore it will not support a verdict by a jury or finding of fact by a court. Southern Surety Co. v. Nalle & Co. (Tex. Com. App.) 242 S. W. 197, 201; Henry v. Phillips, 105 Tex. 459, 466, 151 S. W. 533, 537; T. & P. Ry. Co. v. Johnson, 90 Tex. 304, 308, 38 S. W. 520; Sharp's Ex'r v. Baker, 22 Tex. 306, 315; Webb v. Reynolds (Tex. Com. App.) 207 S. W. 914, 916; Texas Midland R. Co. v. Cummer Mfg. Co. (Tex. Civ. App.) 207 S. W. 617, 620; Hopt v. Utah, 110 U. S. 574, 4 S. Ct. 202, 28 L. Ed. 262, 265, 266; Stone v. Van Noy R. News Co., 153 Ky. 240, 154 S. W. 1092, 1094; Moultrie Lumber Co. v. Driver Lumber Co., 122 Ga. 26, 49 S. E. 729; Eastlick v. Southern Ry. Co., 116 Ga. 48, 42 S. E. 499; McCauley v. Imperial Woolen Co., 261 Pa. 312, 326, 104 A. 617; Carroll v. Knickerbocker Ice Co., 218 N. Y. 435, 439, 113 N. E. 507, Ann. Cas. 1918B, 540. Tested by every sound rule, the testimony offered and admitted in evidence upon this issue was not competent, and it was error for the court to submit this issue to the jury. We sustain this point.

Complaint is also made that the trial court erred in failing to define the terms "vigilant watch" and "in the shortest time and space possible" when timely and properly complained of, because the use of said terms are vague, uncertain, and indefinite, and leaves the jury to speculate as to such issues, and does not give the jury any rule by which to be governed. The record shows that no definition of those terms was given by the trial court to the jury. This was excepted to by plaintiff in error. Article 2189, R. S. 1925, in part, reads: "In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

■ The rule is now established in this state that it is the right of a party, upon properly presenting the matter, to have proper definitions and explanations of such legal terms, if used, as "ordinary care," "negligence," "proximate cause," "unavoidable accident," "contributory negligence" and like terms given by the trial court to the jury, and failure to do so constitutes reversible error. Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570; Owens v. Navarro County Levee Improvement District, 115 Tex. 263, 280 S. W. 532; I. & G. N. R. R. Co. v. Casey (Tex. Com. App.) 46 S.W.(2d) 669; Wichita Valley Ry. Co. v. Williams, 116 Tex. 253, 288 S. W. 425; Houston & T. C. R. R. Co. v. Keeling, 102 Tex. 521, 120 S. W. 847; International & G. N. R. R. Co. v. Welch, 86 Tex. 203, 24 S. W. 390, 40 Am. St. Rep. 829; Hines v. Hodges (Tex. Civ. App.) 238 S. W. 349 (writ refused); Davis v. Pettitt (Tex. Com. App.) 258 S. W. 1046; Northern Texas, etc., Co. v. Jenkins (Tex. Civ. App.) 266 S. W. 175; Speer's Special Issues, §§ 50, 51, 52, 53, etc.

Judge Speer in the case of Robertson & Mueller v. Holden, supra, tersely states the rule in the following language: "In the nature of things, the statute has not attempted to declare what 'legal terms' shall be explained or defined further than 'shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.' Reasonable necessity, considering the term or terms used, then, should be the test. Ordinary words of simple meaning, of course, need not be defined. But those terms which in law have a distinct fixed meaning which an ordinary person would not readily understand should, upon proper request, be defined. This is recognized in the universal practice in negligence cases of the giving of a definition of such terms as 'ordinary care,' 'negligence,' 'proximate cause,' 'unavoidable accident,' and the like."

■ We have carefully examined this record and failed to find that the trial court anywhere defined the terms "negligence," "ordinary care," "contributory negligence," "proximate cause" and similar terms. These terms, if used, under the rule announced by the foregoing statute and decisions, should be defined, if requested. However, the terms "vigilant watch" and "in the shortest time and space possible" are not such legal terms that call for such explanations and definitions thereof to enable the jury to properly pass upon and render a verdict on such issues. In our judgment, they are ordinary words of simple meaning; that they are commonly used; that any ordinary person would readily understand their meaning; and they are not terms which in law have a distinct fixed meaning. To require explanations and definitions of terms already clear would lead to an absurdity and defeat the very purpose for which article 2189 was enacted.

■ This record contains another matter which demands attention, in view of the opinion of the Court of Civil Appeals discussing this question. Bill of exception No. 10 reads: "In the course of his opening argument to the jury, plaintiff's attorney, * * * referred to the special issues as contained in the Court's charge. Special Issues Nos. 1 to 20, inclusive, submitted plaintiff's theory of the case as to various issues of negligence and as to whether or not such negligence was the proximate cause of plaintiff's injuries and damages, and were so framed that an affirmative answer thereto would be a finding in favor of plaintiff and a negative answer thereto would be a finding in favor of defendant on said respective issues." While this precise question was not raised by proper assignment in the application for writ of error, in view of another trial we will discuss the rule announced by the courts upon this question. Much latitude is allowed an attorney in presenting his client's cause to the jury. Broadly speaking, counsel may exercise the right to advise the jury how, in his opinion, from the evidence, the issue submitted should be answered. He may specifically say issues from 1 to 20 should be answered "yes," or issues from 21 to 35 should be answered "no," but it would be highly improper for counsel to appeal to the jury that if they wanted plaintiff or defendant to recover in the suit to answer the issues in a certain way. The statutes with reference to special issues were enacted to do away with this very practice. For a discussion of the rule announced upon this question we refer to the following authorities: Fidelity Union Casualty Co. v. Cary (Tex. Com. App.) 25 S.W.(2d) 302; McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213; T. & P. R. R. Co. v. Edwards (Tex. Com. App.) 36 S.W.(2d) 477; Simmonds v. Ry. Co. (Tex. Com. App.) 29 S.W.(2d) 989; Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765; Robbins v. Wynne (Tex. Com. App.) 44 S.W.(2d) 946; section 326, Speer's Law of Special Issues in Texas, and authorities collated thereunder.

We recommend that the judgments of the Court of Civil Appeals and of the trial court be reversed, and this cause be remanded to the district court for another trial in accordance with this opinion.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.