EMIL S. MEYERS, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, March 17, 1903.

1. **Ordinance: POLICE REGULATION: STREET RAILWAY.** The ordinance known as the "vigilant watch" ordinance of the city of St. Louis is held to be a police regulation binding upon all street railway companies operating cars in the city limits.

2. **Pleading: ACTION: COMMON LAW: STATUTORY LAW.** Plaintiffs may join the same cause of action, common law and statutory negligence, in the same count of the petition.

3. **Negligence: CONTRIBUTORY NEGLIGENCE.** The party who has the last fair opportunity of avoiding an accident is not excused by the negligence of any one else.

4. **Negligence: CONTRIBUTORY NEGLIGENCE: INSTRUCTION.** The following instruction in a case of negligence properly decided the law: "If the jury find from the evidence that plaintiff drove

upon the track, after having seen the approaching car, and that after having gone upon said track his horse balked, and that thereafter the plaintiff had ample time to avoid injury to himself by jumping, leaving or alighting from said wagon and that he negligently failed and refused to do so, then he can not recover for this action for any injury to himself."

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz*, Judge.

AFFIRMED.

### STATEMENT.

Plaintiff recovered a thousand-dollar judgment against defendant for injuries he received in a collision with one of defendant's street cars on June 4, 1900, on Washington avenue, where the avenue is crossed by Beaumont street, in the city of St. Louis. From this judgment defendant appealed.

For the plaintiff the evidence tends to prove that plaintiff was driving a one-horse open spring wagon north on Beaumont street, with a few buckets of sand in the wagon and his brother sitting on the wagon seat beside him. He testified that when he reached Washington avenue he saw a car coming from the west on Washington avenue, at a distance of one hundred and fifty to two hundred feet from the crossing; that when his horse reached the railway track the car was something like one hundred and seventy-five feet away; that after the horse and the fore wheels of the wagon had gotten over the track and just as the hind wheels of the wagon struck the south rail, and when the car was from one hundred to one hundred and twenty-five feet away, the horse stopped and refused to go. Plaintiff had no whip but tried to make the horse go on by slapping him with the ends of the lines. The horse shook his head, but would not go forward.

Plaintiff testified that he had owned the horse six or eight years; that he would balk anywhere, but if let

alone for awhile he would move on himself; that he had lived in the city of St. Louis and used a horse and wagon for twenty years and was familiar with street railway crossings.

Plaintiff also testified that when the horse stopped he had time to get out of the wagon and to walk to the sidewalk before the collision occurred, but that he was trying to get his horse and wagon over the track and supposed he did not have the presence of mind to get out of the wagon.

He further testified that the car was running pretty fast. Other witnesses on his behalf testified that it was running at a speed of twenty miles per hour and that the motorman made no effort whatever to stop or check the car, and when the wagon was struck plaintiff was shot up into the air as high as the trolley line and fell into the gutter on Washington avenue; that the wagon was wrecked and the horse injured.

Plaintiff's brother, after the collision, was found hanging on the front platform of the car. He was uninjured but so frightened that he could not account for how he got out of the wagon or how he got hold of the car. It is manifest, however, that he was not in the wagon when it was struck by the car.

The plaintiff read in evidence an ordinance limiting the speed of the cars to ten miles an hour east of Grand avenue, and also the vigilant watch ordinance.

The evidence tended to prove that plaintiff's injuries were quite serious; that he was laid up for seven or eight weeks and that one of his hips was permanently injured.

For the defendant the motorman in charge of the car testified:

"Coming east on Washington avenue I got within one hundred feet of Beaumont street when I noticed a wagon coming north on Beaumont. I rang my bell and the driver heard it, because he pulled up with his horse's head on a line with the street curbing on Wash-

ington avenue and stopped.   By that time I was within about seventy-five feet from him.   I rang my bell again and had proceeded about ten feet further, about twenty-five feet off from him, and I saw him standing looking at the car, and I reached over and cut off my brake, and applied the power, and I can't say whether he used the whip or line, but he reached up and hit his horse a cut over the back and the animal jumped and I saw that there was going to be an accident, and I shut off the power and pulled back the reverse, and had no more than done that than I hit him.

"The Court:   You stated right in the beginning that you saw the plaintiff, but you didn't say where he was when you first saw him?   A.   He was about seventy-five feet from the curb back on Beaumont."

He further testified that the car was running at a speed of about six miles per hour; that a special police officer—one Keyser—was riding on the front platform of the car with him at the time the collision occurred. Keyser's evidence corroborates that of the motorman and it was also corroborated, as to the speed of the car, by other witnesses.

The negligent acts alleged in the petition were, first, that the defendant's car ran into plaintiff's wagon without the servant in control thereof making any effort to control its speed or to slow up or stop; second, the non-observance of the vigilant watch ordinance of the city of St. Louis; third, running the car at a greater rate of speed than ten miles per hour in violation of the city ordinance.

The answer was a general denial and a plea of contributory negligence.

*Boyle, Priest & Lehmann, George W. Easley* and *Morton Jourdan* for appellant.

(1)   The ordinance regulating speed was passed under the police power.   The vigilant watch ordinance

was passed under the power of the city to contract with reference to the operation of street railways. "The contention that the city has the right under its police powers to adopt the (vigilant watch) ordinance is not tenable." Sanders v. Railroad, 147 Mo. 426-27, and cases collected; Fath v. Railroad, 105 Mo. 452; Senn v. Railroad, 106 Mo. 152; Byington v. Railroad, 147 Mo. 673; Murphy v. Railroad, 153 Mo. 252. (2) The case of Jackson v. Railroad, 157 Mo. 621, does not reverse these cases. It deals alone with a question of a speed ordinance. There is no more authority for saying that the Jackson case overrules, or refuses to follow the Fath and Sanders cases, than there is for saying that Chouquette v. Railroad, 152 Mo. 257, has that effect. The cases stand upon entirely different principles. The speed ordinance was within the legislative power of the municipal assembly. The vigilant watch ordinance was within the contractual powers of that body. As an exercise of the legislative power the ordinance is invalid, as between the public and the defendant. Fath v. Railroad, 39 Mo. App. 452. (3) If these positions are correct, then the plaintiff has joined in the same count a cause of action arising out of contract with two causes of action arising out of tort for common-law negligence. The common-law distinctions between actions *ex contractu* and *ex delicto* are in substance retained by our code. Sumner v. Rogers, 90 Mo. 329. (4) The rule in this State is that such actions can not be blended in the same count. Kendrick v. Railroad, 81 Mo. 521; Harris v. Railroad, 51 Mo. App. 128; Linnville v. Harrison, 30 Mo. 228; Jamison v. Copher, 35 Mo. 351; Ederlin v. Judge, 36 Mo. 483.

*J. W. Benstein* and *A. R. Taylor* for respondent.

(1) In the case of Hutchinson v. Railroad, 161 Mo. 254, the Supreme Court, in treating this identical

question, uses the following language: "But there was that other fact in this case. The city ordinance prohibited the train running at a higher rate than six miles an hour (here ten), and in the absence of proof that she knew, or had reason to apprehend to the contrary, the law will presume that she trusted, as she had a right to trust, that defendant was running its train at not more than six miles an hour, in obedience to the ordinance, and that she regulated her movements accordingly," citing Eunice v. Railroad, 96 Mo. 295; Kellery v. Railroad, 101 Mo. 77; Jennings v. Railroad, 112 Mo. 276; Gratiot v. Railroad, 116 Mo. 464; Sullivan v. Railroad, 117 Mo. 222. (2) Again, in Chamberlain v. Railroad, 133 Mo. 605, these words: "The engineer is not required to stop his train if the trespasser is far enough away to warn him, and a timely warning is sufficient until it is seen that, for some cause, it is not heeded; then it is his duty to avoid killing even a trespasser, if, by the exercise of ordinary care, it can be done." (3) In the case of Morgan v. Railroad, 159 Mo. 280, the same principle is upheld: "Notwithstanding the injured party may have been guilty of contributory negligence, a railroad company is still liable for the injury, if it could have been prevented by the exercise of reasonable care on the part of the company, after discovery of the danger in which the injured party stood, or if the company failed to discover the danger through its own recklessness, when the exercise of ordinary care would have discovered it and averted the calamity." Harlan v. Railroad, 65 Mo. 22; Scoville v. Railroad, 81 Mo. 440; Bergman v. Railroad, 88 Mo. 392; Merz v. Railroad, 88 Mo. 677.

BLAND, P. J. — 1. On the theory that plaintiff had joined in the same count a cause of action arising out of contract, with causes of action arising out of tort for common-law negligence, the defendant moved the court to compel the plaintiff to elect upon which cause

of action he would proceed to trial. The court denied the motion. This ruling is assigned as error. Defendant's assumption that a cause of action growing out of contract is alleged in the petition, is based on the notion that the vigilant watch ordinance is not binding on a street railway company until it is accepted by the company; in other words, that street railway companies in the city of St. Louis are not bound by the ordinance until they have contracted with the city to be governed by it. At one time the Supreme Court held to this view of the ordinance, but this view has been repudiated by later decisions and the ordinance is now held, by the Supreme Court, to be a police regulation binding upon all street railways operating cars in the city limits. We had occasion to review these decisions in the late case of Gebhardt v. St. Louis Transit Company, 71 S. W. 448, and it would serve no useful purpose to repeat that review here. In the same case, following Senn v. Southern R'y Co., 135 Mo. l. c. 519, we held that the plaintiff might join common-law and statutory negligence in the same count or cause of action. In the light of these authorities the motion to compel plaintiff to elect was properly overruled.

2. Defendant offered a demurrer to the evidence which was denied. This ruling is assigned as error.

The contention of defendant is that plaintiff's own evidence shows conclusively that he was guilty of such contributory negligence as precludes his right to recover, and that for this reason the court should have taken the case from the jury. In considering this question we should view the whole evidence in the most favorable aspect it presents in behalf of plaintiff. Baird v. Citizens' R'y Co., 146 Mo. 265; Buesching v. The St. Louis Gaslight Co., 73 Mo. 219. If this is done, we have before us the facts that defendant's servant was running its car at an excessive and prohibited rate of speed thereby being guilty of negligence *per se;*

Vol 99 app—24

that after seeing, or when he should have seen, the plaintiff's perilous situation, the motorman continued this unlawful speed without making any effort whatever to stop or check the car, thereby being guilty of both common-law negligence. and a violation of the vigilant watch ordinance.

As to plaintiff's negligence, the evidence is that when he drove on Washington avenue, the car was from one hundred and fifty to two hundred feet away and that he had plenty of time to cross the track before the car would arrive, which he would have done had not his horse balked; that when the horse balked the wagon was across the track and the car was something like one hundred to one hundred and twenty-five feet distant from him. If this is true, and we must assume it to be true for the purpose of this discussion, the motorman saw, or by the exercise of ordinary diligence could have seen, the plaintiff's wagon stopped in the track one hundred to one hundred and twenty-five feet in front of him and in time to have checked or stopped the car and avoided the collision, but he made no effort whatever to slow up or stop the car, hence the collision, which he knew or should have known would occur if he did nothing to avoid it.

It is no answer or excuse for this gross negligence to say that the motorman had a right to assume that plaintiff would drive on and cross the track before the car would reach him. The motorman made no such claim for himself in his evidence. The wagon was at a standstill and the plaintiff was making an ineffectual effort to urge the horse on; this situation was seen, or could have been seen, by the motorman and it was his bounden duty to take cognizance of the situation as he saw, or should have seen it. If such was not his duty, then a teamster, about to drive over a railroad crossing (seeing no car near enough to prevent him from doing so in safety) who drives on the track and his team balks there or is unable to pull the load over, if he remains

with his team urging it on in the hope of getting out
of the way of the car, is without remedy, if he is struck
and injured by the negligence of the motorman.

But it is contended that plaintiff's horse was known
to him to be balky; that he knew he would not move until
he got ready; that plaintiff knew urging or whipping
him would not avail to make him go forward; that
plaintiff had time to get out of the wagon and escape
danger and for this reason was guilty of such negligence
as to bar recovery. Granting that plaintiff knew these
facts and that he was negligent in failing to get out of
the wagon and thus avoid injury, it does not follow that
the motorman owed him no duty and that plaintiff's
negligence was the proximate cause of the injury. The
motorman had the last fair chance of avoiding the in-
jury and the doctrine in this State is well settled that
the party who has the last fair opportunity of avoiding
the accident is not excused by the negligence of anyone
else. Klockenbrink v. St. L. & M. Riv. Co., 81 Mo. App.
l. c. 356-7, and cases cited; McAndrews v. Railway, 83
Mo. App. 233, s. c., on second appeal, 88 Mo. App.
376; Guenther v. Railway Co., 108 Mo. l. c. 21; Reardon
v. Railway, 114 Mo. l. c. 406; Sinclair v. Railway, 133
Mo. l. c. 239; Morgan v. Wabash R'y Co., 159 Mo. l. c.
280.

We conclude that the court did not err in refusing
to take the case from the jury.

3. The defendant asked the following instruction:

"If the jury find from the evidence that the plain-
tiff drove upon the track after having seen the ap-
proaching car, and that after so going upon said track
his horse balked, and that thereafter the plaintiff had
ample time to avoid the injury to himself by jumping,
leaving or alighting from said wagon, then he can not
recover in this case for any injury to himself."

The instruction as asked was refused by the court,
but it was given in the following modified form:

"If the jury find from the evidence that the plain-

tiff drove upon the track after having seen the approaching car, and that after having gone upon said track his horse balked, and that thereafter the plaintiff had ample time to avoid injury to himself by jumping, leaving or alighting from said wagon, and that he negligently failed and refused to do so, then he can not recover in this action for any injury to himself.''

It was a question for the jury to determine from all the facts and circumstances in evidence whether or not the defendant, by remaining in his wagon, was guilty of negligence which continued down to the injury and directly contributed thereto.

Plaintiff knew that it was the duty of the motorman to keep a vigilant watch for persons and vehicles upon the track; knew that his situation was seen by the motorman; knew that it was the duty of the motorman to stop his car to avoid a collision; knew that he had had time and space in which to stop, if running at a lawful speed, and had a right to assume that he would observe the ordinance and the dictates of humanity by stopping his car, which if he had done, there would have been no collision and injury. In such circumstances, it seems to us, it would be monstrous to hold that plaintiff, by remaining in his wagon when he might have gotten out, was guilty of such contributory negligence as to preclude his right of recovery.

We think the instruction as modified presented this phase of the case to the jury more favorably for defendant than the facts warranted and that the one asked was wholly inadmissible.

The instructions given for plaintiff have met the approval of the appellate courts of this State and they, with those given for the defendant, presented all the issues raised by the pleadings and the evidence.

The plaintiff's injuries were severe and the evidence tends to prove that the injury to his hip is permanent. We do not think that for such injuries one thousand dollars are excessive damages.

Discovering no reversible error in the record, the judgment is affirmed. *Goode* and *Reyburn, JJ.,* concur.