MAX GROSSMAN, Appellant, v. ROLLA WELLS, Receiver, Etc.

Division One, April 12, 1926.

1. **NEGLIGENCE: Ordinance: Contributory.** Where ordinance negligence is relied upon by the plaintiff as a basis of recovery, contributory negligence, if shown, is a good defense. Contributory negligence is always a defense to either statutory or ordinance negligence.

2. ————: **Vigilant Watch: Ordinary Care: Contributory.** Where plaintiff submits his case upon a violation by defendant of a vigilant-watch ordinance, which required the motorman in charge of a street car to keep a vigilant watch for all vehicles on the track or moving towards it and on the first appearance of danger to such vehicle to stop the car in the shortest time and space possible, the duty imposed upon the defendant railway company is broader and stronger than the usual common-law duty of ordinary care, except in situations where the common law would impose a very high degree of care, as in highly congested places of travel. While defendant in such case is entitled to invoke contributory negligence as a defense, its duties are to be measured by the terms of the ordinance. [Following State ex rel. Vogt v. Reynolds, 295 Mo. 375, 387.]

3. ————: ————: ————: ————: **Instruction.** Plaintiff had loaded his one-horse wagon in a building near the middle of a long block on the north side of the street; he led his horse out of the front door and towards the street car track, with the view of reaching the south side of the track and turning east on that side of the street; as he came out of the door a street car was standing just east of the next cross street east of him, about three hundred feet, and when his wagon was almost across the track this car struck its hind wheels and injured him. He submitted his case upon a pleaded violation of the Vigilant-Watch Ordinance, by an instruction well phrased under the ordinance, and hypothesizing his right to recover on the theory that defendant's motorman did not keep the vigilant watch required by it, and that such neglect caused his injury. The defendant's instruction on contributory negligence correctly told the jury that "the law imposed upon plaintiff the duty to use reasonable care and caution for his own safety," but it further required him "to make all reasonable efforts to ascertain whether a street car was approaching from the east, and to use all reasonable care to avoid a collision with such car" and to do this "just

before he went upon the car track or so near thereto as to be in danger of a collision with a street car," and "if plaintiff failed to use such reasonable care and caution, and failed to look for a car approaching from the east, just before he went so near the track as to be in danger of a collision, then he was guilty of negligence that bars him from recovering in this case, and the verdict must be for defendant." *Held*, that defendant's agents operating the street car were required to keep a vigilant watch, which means something more than ordinary care; and while the plaintiff was required to use ordinary care to avoid the collision, and conceding without deciding that "reasonable care" and "ordinary care" have the same meaning, yet the word "such" in the connection in which used made the last clause of defendant's instruction relate back to the word "all" and made the last clause read "all reasonable care and caution," and in effect barred plaintiff's right to recover if he failed to use "all reasonable care and caution" to avoid the collision, and eliminated defendant's duty under the ordinance, and was error. Besides, this instruction, when read in connection with another given, which required "plaintiff to look carefully for a street car coming from the east at a convenient distance from the west-bound track, just before going onto or near that track" and told the jury that "his duties were not wholly performed by his looking for a car coming from the east, before he went near to the track, and to look once when the car was some distance away was not sufficient"; that the plaintiff could not rely "on a presumption that the motorman would not be negligent in operating the street car," but "it was plaintiff's duty to make all reasonable effort to find out whether a street car was approaching from the east, immediately before he went so close to the west-bound track as to be in danger of a collision with such car," not only entirely ignored defendant's duty under the ordinance, but was in effect a direction to the jury to return a verdict for defendant at all events—the facts being that plaintiff took the precaution to have a man look for a street car before he began to pass through the door of the building and this man, after looking, assured him it was safe to attempt to cross the track; that the distance between the sidewalk and track was only about twelve feet, and the fact that the car traveled the three hundred feet from where it was standing itself showing excessive speed and that the motorman failed to keep a vigilant watch.

4. ————: Vigilant Watch: Reliance upon Presumption of Speed: Instruction. In the trial of a case based on a violation of a vigilant-watch ordinance, an instruction for defendant telling the jury that the plaintiff, before crossing the track, could not rely upon the presumption that the street car would be run at the ordinance speed, is error.

5. ———: ———: Continuous Looking by Traveler: Instruction. An instruction which requires the driver of a vehicle about to cross a street-car track to continuously look for an approaching car, imposes on him extraordinary care, rather than ordinary care, to protect himself from injury, and is error.

Corpus Juris-Cyc. References: All, 2 C. J., p. 1134, n. 57. Negligence, 29 Cyc., p. 508, n. 53. Street Railroads, 36 Cyc., p. 1458, n. 34; p. 1552, .n. 35; p. 1554, n. 47; p. 1642, n. 24.

Appeal from St. Louis City Circuit Court.—*Hon. William A. Wilson,* Judge.

REVERSED AND REMANDED.

*W. H. Douglas* for appellant.

(1) The court erred in giving defendant's Instruction 6 at the request of the defendant, for the reasons that (a) in effect, it asserted that the defendant had a paramount right to the use of the street, while under the law plaintiff had an equal right with defendant to the use of the street. Bruening v. St. Ry. Co., 180 Mo. App. 441; Kinlan v. Railroad, 216 Mo. 145; Mason v. United Rys. Co., 244 S. W. 324; Logan v. Railroad, 254 S. W. 711; Kennayde v. Railroad, 45 Mo. 262. (b) It required of plaintiff that he "use all reasonable efforts" to ascertain if a car was coming, while under the law plaintiff was only required to use ordinary care. Draper v. Railroad Co., 199 Mo. 485; Strauchon v. Ry. Co., 233 Mo. 598; Derrington v. City, 186 S. W. 564. (c) It required plaintiff to "use all reasonable care to avoid collision with the car just before he went upon the car track," while under the law plaintiff is only required to use ordinary care. Authorities supra. (d) It is in direct conflict with plaintiff's Instructions 1 and 3, and leaves out of consideration defendant's prior negligence in violating the speed ordinance and the vigilant-watch ordinance. Cytron v. Transit Co., 205 Mo. 718; Harrington v. Dunham, 273 Mo. 427; Smith v. Railroad Co., 169

Mo. App. 610; Deitring v. Transit Co., 109 Mo. App. 538; Christensen v. Wells, 258 S. W. 14; Criss v. United Railroad, 183 Mo. App. 392; Hutchinson v. Railroad Co., 161 Mo. 254. (e) It precluded a recovery under the Vigilant-Watch Ordinance. State ex rel. v. Reynolds, 295 Mo. 375. (f) It singles out particular facts and comments on them and gives them undue prominence. Rice v. Bridge & Transit Co., 216 S. W. 751; Simpson v. Burnett, 299 Mo. 232; Jones v. Railroad, 287 Mo. 64. (g) It required of plaintiff a higher degree of care than the law requires of him by requiring the plaintiff to continue to look for cars from the east just before going upon the track and requires plaintiff to look carefully just before going on to the tracks. Authorities under (b) and (c). (h) It states that plaintiff had no right to rely upon the presumption that the motorman would not be negligent in operation of the street car, while under the law plaintiff had a right, in the absence of knowledge to the contrary, to assume that defendant would not be negligent. Authorities under (a) and (b) above. (i) It told the jury that the duty ''which the law enjoined upon the plaintiff was wholly independent of any duty of the motorman operating the street car in regard to giving signals or concerning the speed at which the car was being operated at the time,'' while plaintiff had a right, in the absence of knowledge to the contrary, to assume that the motorman of the approaching car would not be negligent in violating the speed ordinance or any other duty enjoined upon the defendant by law. Authorities under (a), (b) and (c) above.

*Thomas E. Francis, Charles W. Bates* and *Ernest S. Green* for respondent.

(1)  The court did not commit reversible error in giving to the jury defendant's instruction numbered 6, because said instruction fairly and squarely presented the issues and properly declared the law as applicable to the facts in the instant case. Dyrcz v. Mo. Pac. Ry. Co.,

238 Mo. 33; Kelsay v. Mo. Pac. Ry. Co., 129 Mo. 362; Keele v. Railroad, 258 Mo. 62; Huggart v. Railroad, 134 Mo. 673; Voelker Products Co. v. United Rys. Co., 170 S. W. 333; Chappell v. United Rys. Co., 156 S. W. 823. (a) It did not tell the jury that the defendant had a paramount right to the use of the street in question. The instruction merely defined plaintiff's duties in exercising care and caution for his own preservation. Rapp v. Transit Co., 190 Mo. 144; Felver v. Railroad, 216 Mo. 195. (b) It did not impose a greater duty upon the plaintiff than that required by law. "Reasonable care" and "ordinary care" are convertible terms. 33 Cyc. p. 1566; 29 Cyc. p. 427; Pennington v. K. C. Rys. Co., 213 S. W. 137.; Aleckson v. Railroad Co., 213 S. W. 894; State ex rel. v. Ellison, 182 S. W. 963; Lyons v. Railroad, 253 Mo. 157. (c) The use of the word "all" in an instruction in connection with "reasonable care" or "ordinary care" does not constitute reversible error. 2 C. J. p. 1134; Derrington v. City, 186 S. W. 561; Murphy v. Railroad, 228 Mo. 56; Lyons v. Railroad, 253 Mo. 157; State ex rel. v. Ellison, 182 S. W. 961. (2) The court did not commit reversible error in giving to the jury defendant's instruction numbered 7, because said instruction fairly and squarely presented the issues and properly declared the law as applicable to the facts in the instant case. Kelsay v. Mo. Pac. Ry. Co., 129 Mo. 362. (3) Even if there are errors in any of defendant's instructions, those errors are harmless for the reason that the case should never have been submitted to the jury under the evidence upon any of the assignments of negligence pleaded in the petition. Chappel v. United Rys. Co., 174 Mo. App. 126; Dey v. United Rys. Co., 140 Mo. App. 461; Murray v. Wire & Iron Co., 238 S. W. 838; Riggs v. Railways Co., 220 S. W. 698; Fleming v. Railroad Co., 172 S. W. 358.

GRAVES, J.—Action for personal injuries against the receiver of the United Railways Company of St. Louis. The collision occurred between one of defend-

ant's street cars and plaintiff's one-horse wagon at or near 3025 Olive Street in the city of St. Louis. The alleged negligence of the defendant is stated in the petition in this language:

"Plaintiff further says that said injuries were directly caused on account of the negligence of the defendant in this, to-wit:

"First. That the motorman in charge of said car saw or by the exercise of ordinary care could have seen plaintiff in a position of peril in time by the exercise of ordinary care to have stopped the car or checked its speed or given plaintiff timely warning of its approach and thereby avoid any injury to plaintiff, but negligently failed to do so.

"Second. That the defendant negligently failed to give plaintiff any warning of the approach of said car, thereby causing the injuries to plaintiff as aforesaid.

"Third. That on said date and long prior thereto Section 1055 of the Revised Code of the City of St. Louis for the year 1914 was in force, which is as follows:

" 'Sec. 1055. *Regulations as to rate of speed.*— No car shall be drawn or propelled at a speed greater than the rate of ten miles per hour in that part of the city bounded by the Mississippi River on the east, Arsenal Street on the south, and Grand Avenue and its prolongation to said river on the west and north, inclusive of both said streets, said districts so bounded to be known as central district, and no car shall be drawn or propelled at a speed greater than at the rate of fifteen miles per hour in that part of the city not included in the said central district above bounded and described, to be known as the outer district.'

"That the place where plaintiff was injured was in the central district as defined by said ordinance and that at the time defendant's car was being negligently run at a rate of speed in excess of ten miles per hour, thereby causing plaintiff's injuries as aforesaid.

"Fourth. That on said date Subdivision 4 of Section 1054 of the Revised Code of the City of St. Louis for the year 1914 was in force, which is as follows:

" 'Fourth. The conductor, motorman, gripman, driver, or any other person in charge of each car, shall keep vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible.'

"That the motorman in charge of said car negligently failed to keep a vigilant watch for vehicles and persons on the track or moving toward it and on the first appearance of danger to plaintiff to stop the car in the shortest time and space possible with safety to the passengers, thereby causing plaintiff's injuries as aforesaid.

"Wherefore, plaintiff says that he has been damaged in the sum of twenty-five thousand dollars on account of the injuries sustained as aforesaid, for which he asks judgment against defendant with his costs."

The answer was (1) a general denial, and (2) a plea of contributory negligence. Reply was a general denial. Upon a trial before a jury a verdict was returned in favor of defendant. A timely motion for new trial having been filed and overruled, the plaintiff has appealed from the judgment entered upon the verdict aforesaid. The amount ($25,000) asked in the petition casts the appellate jurisdiction upon this court. The assignments of error are five in number.

Assignments 1, 2, 3 and 4 charge erroneous action by the trial court in the giving of instructions numbered 6, 7, 8 and 9 for the defendant. The fifth and last assignment is one which charges generally that the court erred in refusing to sustain plaintiff's motion for new trial.

Details of the facts and a discussion of the assignments of error are left to the opinion. This is a general outline of the case.

I.  While there are five assignments of error, yet when learned counsel for appellant comes to his points and authorities only one, or, at most two, are seriously urged, and these go to the alleged errors in instructions. A short outline of the facts is required for a discussion of these argued points. In this, like all cases of this kind, the facts are conflicting. The evidence for plaintiff has been abstracted by counsel and this abstract is as short as I could make it. The plaintiff testified:

"My name is Max Grossman and I now live at 1011-A Walton Avenue. I am forty-seven years old, and am in the junk business and was in that business on the 17th day of April, last year, and have been for about twenty-five years.

"I was injured about April 17th, last year, about 3025 Olive Street. Garrison Avenue is the first street east of that place, and it is east of Grand Avenue. I was hurt about 3:30 in the afternoon. I went into the Auto Top Company place at 3025 Olive Street and asked the boss if he had some stuff to sell and he said he had a little. It is a big place—regular automobile place. The building extends to the sidewalk—the front part of the building—on the building line. There is a driveway from Olive Street into the building. I judge the sidewalk in front of the building is about eleven feet wide, and from the edge of the sidewalk to the first rail of the car track on Olive Street is about the same distance— eleven feet. Olive Street from 3025 looking east, is straight; just a little curve. From the sidewalk in front of the building I could see east to Garrison Avenue, a distance of about three hundred feet.

"I drove into the building with a single wagon with one horse to it. After I got in I loaded this wagon with some material, and when I had it loaded I called to the man inside of the place and I said, 'Won't you please lead me out of the place' and he said, 'Yes, sir,' and he went right out, and when he went out then he started to wave me with his hands, and he said 'Nothing in view, you can come out, both sides are clear,' and I came out

right to the door. I was about two or three feet from the door when he said for me to come out. I was on the ground. I took the horse by the bridle and started to lead him, and when I got outside of the pavement I was looking east and west. I was looking east as far as Garrison Avenue and I saw no car. I didn't see anything—I mean a street car—no street car. There was no street car at that time between me and Garrison Avenue. When I looked again I was on the sidewalk pretty near the edge. I looked three or four times back and forth. The last time I looked I was at the track in front of the horse, and I saw no car. I was leading the horse and I went on to the track and turned so I got as far as the back wheel, the left wheel of the wagon was in the track yet and at that time when I got the crash and after that I didn't know nothing. I turned on to the track and made the turn. There was not sufficient space to make the turn without driving on to the track. I didn't hear any gong from the street car before the collision or at any time. I didn't see the street car before the collision. I was leading the horse at the side by the bridle. I was facing the same direction the horse was going. I sustained injuries to my spine when the street car struck my wagon.''

Chas. R. Landholt, the man whom plaintiff asked to pilot him out of the building, testified:

''My name is Charles R. Landholt. I live at 4941 Arlington Avenue. I have seen Mr. Grossman, the plaintiff. On the 17th day of April last year I was running the Auto Repair Shop in the rear of 3025 Olive. I remember Mr. Grossman came there that day. After his wagon was loaded he came back and asked me if I would go out and see if there was any street car coming as he wanted to pull out of there and I went out to the doorway there, facing Olive Street—3025 Olive Street. I went out to the west side of the doorway and looked east on Olive Street to see if there was any car coming. There was a car at the corner of Garrison and Olive on the east corner, at the regular stopping place where street

cars stop to take on and let off passengers. The car was stopped there. When I saw the car was stopped there I gave him the signal to come on. At that time Mr. Grossman was just inside of the doorway. He had the horse by the bridle and led the horse out of the doorway and around on to Olive Street. He went out into Olive Street as far as the car track and got one wheel in the car track. I saw the street car again after that. It was about half way between Garrison Avenue and where he was. Mr. Grossman led the horse into the track and then he made an effort to bring him around off of the car track. He just turned around into Olive Street. He went west after he got on the car track about fifteen feet before the collision. I saw the collision. The front end of the street car and the rear end of the wagon come together. ·I heard a gong before the collision and the first time I heard it before the collision was about twenty or twenty-five feet from the wagon. The wagon at that time was in the car track. I didn't hear anything before the time I heard it about twenty or twenty-five feet from the wagon after the car left where it had stopped about at Garrison Avenue."

. Another witness, Joe Turken, testified:

"My name is Joe Turken. I live at 3045 Sheridan Avenue. I know the plaintiff now. The first time I saw him was at the time of the accident. I didn't know him before. At that time I was at 3012 Olive Street, across the street. I came over with a machine for plumbing work that was to be done. I had a job there to do. I am a plumber.

"Before this accident I saw the street car on the northeast corner of Garrison Avenue. It was standing. I was waiting for another plumber to come in on the job, and somebody got off, I think it was a lady and a child got off the car and I didn't pay no attention to the car, but I just accidentally saw a lady and a child get off the car. I didn't see this accident until after it was struck by the street car. At that time I saw it. I heard the noise and then I turned around. I was in the machine. It sounded

like a street car hitting into a wagon. Then I went over to see what it was hitting.

"I saw Mr. Grossman on the sidewalk. He was sitting on the sidewalk. They got him some water from the garage—cold water. There was a wagon on the north side near the sidewalk, on the north side close to the curb. The street car was behind the wagon. After the accident I took Mr. Grossman home in my machine.

"Cross-examination: I didn't hear the bell ringing just before the collision. I didn't pay any attention to it. I was not in the building. I was outside in my machine getting some tools. I never saw the car after I saw it stop until I went over after the collision. I was standing at my machine with my back to the west."

Defendant's evidence, and evidence upon cross-examination of plaintiff and his witnesses, can best be noted in the points discussed in the course of the opinion, if necessary.

II. The broadside attack by appellant is made as against Instruction 6 given for defendant. It is attacked from many angles, some of which, at least, deserve serious consideration. This instruction reads:

"The court instructs the jury that at the time the place mentioned in evidence, the street car tracks were within themselves warnings of danger, and the law imposed upon the plaintiff the duty to use reasonable care and caution for his own safety, just before going upon or near said tracks; and the law required the plaintiff, while approaching the car tracks, to make all reasonable efforts, by the use of his sense of sight or hearing, to ascertain whether or not a street car was approaching from the east, and to use all reasonable care to avoid a collision with such car, just before he went upon the car track or so near thereto as to be in danger of a collision with a street car; and if the plaintiff failed to use such reasonable care and caution, and failed to look for a car approaching from the east, just before he went so near the track as to be in danger of a collision, and failed to

make reasonable efforts to avoid a collision, then he was guilty of negligence which bars him from recovering in this case and the verdict of the jury must be for the defendant.''

Before a discussion of the complaints made as to this instruction, the exact status of the case should be in our mind's eye.

The first ground of pleaded negligence is what we call the humanitarian rule, which of course is a species of court-made or common-law negligence. The second ground of pleaded negligence is common-law negligence. The third ground of pleaded negligence is ordinance (statutory) negligence, in that it pleaded a speed in excess of the ordinary rate in that particular section of the city. The fourth ground of pleaded negligence is likewise ordinance negligence, in that it invokes what is known as the Vigilant Watch Ordinance of the city of St. Louis.

Now when the plaintiff came to submit his case, by instructions, he abandoned all grounds of negligence, except the violation of the Vigilant Watch Ordinance.

The strict humanitarian rule pleaded in the first paragraph of the petition as causal negligence was abandoned. The speed of the car as a sole causal act of negligence was abandoned, as was the failure to give warning. When we say that these were abandoned, we mean they were abandoned unless in some way they are wrapped up in the Vigilant Watch Ordinance of said city. With this outline of the status of the case as presented to the jury, after trial and at its submission, we are better enabled to discuss objections to defendant's instructions, which discussion follows in succeeding paragraphs.

III.   It is urged by appellant, as above stated, that there was error committed by the trial court by the giving of instructions numbered 6 and 7 for defendant. These instructions read:

''6.   The court instructs the jury that at the time and place mentioned in evidence, the street car tracks were

within themselves warnings of danger; and the law imposed upon the plaintiff the duty to use reasonable care and caution for his own safety, just before going upon or near said tracks; and the law required the plaintiff, while approaching the car tracks, to make all reasonable efforts, by the use of his sense of sight or hearing, to ascertain whether or not a street car was approaching from the east, and to use all reasonable care to avoid a collision with such car, just before he went upon the car track or so near thereto as to be in danger of a collision with a street car; and if the plaintiff failed to use such reasonable care and caution, and failed to look for a car approaching from the east, just before he went so near the track as to be in danger of a collision, and failed to make reasonable efforts to avoid a collision, then he was guilty of negligence which bars him from recovering in this case and the verdict of the jury must be for the defendant.

"7. The court instructs the jury that the duty of the plaintiff, in approaching the street car tracks, to look for on-coming cars from the east, before going onto the west-bound car track or so close to said track as to be in danger of a collision, was a continuing and binding one, and the law required the plaintiff to look carefully for a street car coming from the east, at a convenient distance from the west-bound track just before going onto or near that track. His duties were not wholly performed by his looking for a car coming from the east, before he went near to the car track; and to look once, before going near the track, when the car was some distance away, was not sufficient; the plaintiff could not take a last look at some distance away from the car track, whatever that distance may have been, and then, without again looking, go so near the track as to be in danger of a collision with a street car, relying on a presumption that the motorman would not be negligent in the operation of the street car; it was the plaintiff's duty to make all reasonable effort to find out whether a street car was approaching from the east, immediately before he went

so close to the west-bound car track as to be in danger of a collision with such car. And this duty, which the law enjoined upon the plaintiff, was wholly independent of any duty of the motorman operating the street car in regard to the giving of signals, or concerning the speed at which the car was being operated at the time; and if the plaintiff negligently failed to perform his duties as above mentioned, and such negligence, if any on his part, directly contributed to the collision mentioned, then the verdict of the jury must be for the defendant.''

We have set them out in full, and together, to the end that the common questions involved in each may be discussed at this point.

Before a discussion of these matters, some general observations are apropos. The trial proceeded upon the theory that where ordinance negligence was relied upon by the plaintiff for recovery, then contributory negligence was a good defense, if shown. This was proper. [Gubernick v. United Railways, 217 S. W. l. c. 35.] Contributory negligence is always a defense to either statutory or ordinance negligence.

As said, the plaintiff submitted his case upon the Vigilant Watch Ordinance, and the duty imposed upon the defendant by that ordinance is the duty involved in this case by the submission made by the plaintiff by and through his instructions. This duty is broader and stronger than the usual common-law duty of ordinary care, except in situations where the common law would impose a very high degree of care, as in highly congested places of travel. [State ex rel. Vogt 'v. Reynolds, 295 Mo. l. c. 387, 388 and 389.] So, while the defendant was entitled to invoke contributory negligence, it should have its duties measured by the terms of the Vigilant Watch Ordinance, as we have outlined and defined that ordinance, in the Vogt case, supra, after a review of previous cases, and the conflicting language of our previous cases. The doctrine of the Vogt case, by Court in Banc, is as yet the controlling case upon defendant's duties toward the traveler under the Vigilant Watch Ordinance of the

city of St. Louis. It was a hotly contested case, and a much considered case, in this court. In it we defined "vigilant watch" and distinguished this ordinance duty from mere common-law duty of "ordinary care."

With these sidelights, we next take up the contentions as to the alleged errors in the instructions, and more particularly to those alleged to be in instructions numbered 6 and 7.

IV. Under the rules established in the foregoing Vogt case, and other cases, the plaintiff was required to use ordinary care to obviate a collision, and to protect himself, but the defendant's agents operating the street car were required to keep a *vigilant* watch (not an ordinary watch) for persons and vehicles approaching or crossing the railroad tracks, "and on the first appearance of danger to such persons or vehicles the car *shall* be stopped in the *shortest time* and *space possible.*"

By court construction the phrase, "under the circumstances with due regard for the safety of the passengers," has been written into the ordinance. The principal instruction for the plaintiff was well phrased under the ordinance, and predicated recovery upon the theory that defendant's motorman, then running the car, did not keep that "vigilant watch" required by the ordinance, and that such neglect occasioned plaintiff's injury. Let us then measure the criticised instructions by these rules.

It is clear that Instruction 6 is unfortunate in its phraseology. Remembering that the duty of plaintiff was the use of ordinary care, how stands this instruction? We eliminate the platitude to the effect that street car tracks are warnings of danger. We need not discuss whether or not there might be a difference between street car tracks and steam railroad tracks. The instruction then correctly states: "the law imposed upon the plaintiff the duty to use reasonable care and caution for his own safety." But the instruction does not stop there. It proceeds to require the plaintiff "to make *all*

reasonable efforts . . . to ascertain whether or not a street car was approaching from the east, and to use *all* reasonable care to avoid collision with such car.'' And this was to be done ''just before he went upon the car track or so near thereto as to be in danger of a collision with a street car.'' The latter portion of the instruction proceeds with the omission of the word ''all'' but says ''if the plaintiff failed to use *such* reasonable care and caution'' then he was guilty of contributory negligence barring his recovery. The use of the word ''such'' in the connection where found, makes this clause relate back to those clauses using the word ''all,'' and in fact makes this last clause to read, *''all* reasonable care and caution.''

It may stand conceded, for the purposes of this case, that ''reasonable care'' and ''ordinary care'' are interchangeable terms, and have the same meaning, as was ruled in State ex rel. v. Ellison, 182 S. W. 1. c. 963, yet such concession does not settle the contention in this case. Here we have the qualifying word ''all,'' which is used as a word of emphasis, and to enlarge the term ''ordinary care,'' by increasing the degree of care. [2 C. J. p. 1134, second column.] . In this instance it was used for this purpose. Thus in Derrington v. City of Poplar Bluff, 186 S. W. 1. c. 564, it is said:

''The second instruction would make the city liable if the jury found that it failed to use all reasonable care and caution to keep the street in repair. This should not have been emphasized by the use of the word 'all.' ''

The duty of the city in that case was the use of ''ordinary care,'' or ''reasonable care'' if the two phrases have the same meaning. It suffices to say that the use of the word ''all'' was properly condemned in that instruction, and should be condemned in the one before us. As said in Harrington v. Dunham, 273 Mo. 1. c. 427: ''These instructions are in effect directions to find for the defendants at all events.'' Such may well be said of Instructions 6 and 7 in this case. This plaintiff took the precaution to have a man look for cars, before he

left the building, and this man, after looking, told him to come on and cross the tracks. Plaintiff says he saw no car to the east, but there are two of his witnesses who . say that there was a car to the east, at the corner of Garrison and Olive (300 feet away), and this car was then stopped at the place for taking off and on passengers. This situation must be considered in reviewing instructions. It is said that there is no evidence of excessive speed, or that the motorman failed to keep vigilant watch. The facts speak for themselves. The space that plaintiff had to cover is in evidence. The distance that the car was from him, when he started across is in evidence. That the motorman could have seen the position of plaintiff, during the time he was running three hundred feet, is beyond question, if he had been keeping a vigilant watch. These matters were for the jury, in that there were facts in evidence from which the jury could conclude that there was failure upon the part of the motorman to keep a vigilant watch, and this is the ground of recovery in plaintiff's instruction. We conclude that Instruction Six was erroneous. It may be all right to use the expression "all reasonable care" in an instruction against the defendant, where such defendant is charged with violating a Vigilant Watch Ordinance. In a case or two of this kind the word "all" has been approved. We say it may be right to use the phrase in defining defendant's duty, but it might be best to say its use does not harm the defendant, because of the duty imposed by the Vigilant Watch Ordinance. [State ex rel. Vogt v. Reynolds, 295 Mo. 375.]

V. If this were a case purely under the humanitarian rule, with the situation as presented in plaintiff's sworn facts, the propriety of the case going to the jury would hardly be questioned. According to all the witnesses for the plaintiff the car was at least three hundred feet away, and there was a plain view of plaintiff and his wagon for such distance, and this at a place where the law (ordinance) made it the duty of defend-

ant's agents to be on the lookout for persons on the track, or about to get upon the track. Nor would the question of contributory negligence be in such a case. This, however, is perhaps outside of the issues finally submitted.

We have indicated, supra, in another paragraph, that Instructions 6 and 7, when taken together, are erroneous. We think that this is not only true, but further that taken separately, they are likewise erroneous. Going to Instruction Seven, there is error therein for several reasons. In it is couched the doctrine that plaintiff could not rely upon the presumption that the street car would be run at ordinance speed. This is error. [Strauchon v. Met. St. Ry. Co., 232 Mo. l. c. 600 et seq.; Powers v. Transit Co., 202 Mo. l. c. 280, and cases cited.] Secondly, in it is the reiterated doctrine that there must be continuous looking upon the part of the plaintiff, which imposes upon him extraordinary, rather than ordinary care, to protect himself from injury. In this there was error. [Harrington v. Dunham, 273 Mo. l. c. 427.]

It should be said that what plaintiff's witnesses saw, the plaintiff, in the exercise of ordinary care, should have seen. But granting this, he would have only seen the street car three hundred feet to the east, standing still, in discharging and receiving passengers, and with the short distance of fifteen to seventeen feet to cover in crossing the tracks, there was left at least a question for the jury as to the alleged contributory negligence.

The ends of justice will be best subserved by reversing the present judgment, and the remanding of this cause. It is so ordered. All concur.