## DALLAS RY. & TERMINAL CO. v. BANKSTON. *

No. 10724.

Court of Civil Appeals of Texas. Dallas. Nov. 10, 1930.

Rehearing Denied Dec. 6, 1930.

Worsham, Rollins, Burford, Ryburn & Hincks, of Dallas, for appellant.

J. Hart Willis and J. W. Madden, Jr., both of Dallas, for appellee.

LOONEY, J.

This action was to recover damages for personal injuries to plaintiff, and for the destruction of his automobile, caused by a collision between a street car and the automobile in which plaintiff and two others were at the time riding. Plaintiff's cause of action was based, in part, on negligence per se, arising from alleged violation of certain ordinances of the city of Dallas and, in part, on negligence arising from the alleged breach by defendant of its Common Law duty to use due care.

The pertinent provisions of the ordinances involved are these: Article 1881, as follows: "The motorman of each car shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it; and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible. * * *" Article 1892, reading: "All street railroad companies shall be required to keep level with the balance of the street the space between their rails and tracks, and two feet on each side of same, with similar material to that with which the balance of the street on which the same are situated shall be repaired or improved, and they shall have the tops of the rails of their tracks on a level with the surface of the streets, and they shall keep their tracks in repair and according to the street grade; and they shall keep any culverts constructed by them in repair and in good condition, as likewise any part between their rails and tracks. * * *" And article 1893, reading: "That any person, corporation, company or copartnership operating a street railroad in the City of Dallas, or any tracks running through any portion of the City of Dallas, shall be liable for all damages which may be sustained by any person or property by reason of the violation or non-compliance of such person, corporation, company, or copartnership with the provisions of the preceding article, or by reason of the failure of such person, corporation, company or copartnership to keep such railroad in proper repair or by reason of the negligent operation or maintenance of such street railroad, or by reason of the carelessness, negligence or misconduct, of any of their agents or servants. * * *"

The grounds relied upon for recovery are reflected by findings of the jury in response to the special issues submitted. Those relating to the alleged violation of ordinances are as follows: That defendant's motorman failed to keep a vigilant watch for plaintiff's automobile; that the motorman failed to stop the car in the shortest time and space possible after the plaintiff's danger became apparent; that defendant failed to keep the space between its tracks and rails and two feet on each side level with the balance of the street; and that these failures were proximate causes.

The findings on issues, pertaining to negligence arising from the alleged breach by defendant of its Common Law duty, are these: That the rate of speed the street car was being operated at the time was negligence and a proximate cause; that the motorman operating the car discovered plaintiff's perilous position in time, by the exercise of ordinary care, which he failed to exercise, to have prevented the collision; that the motorman negligently failed to keep a lookout, and that such failure was a proximate cause; that the motorman, just prior

to the collision, negligently abandoned the portion of the car where the control appliances were located, also negligently failed to apply the brakes; and that such negligence was a proximate cause.

Judgment was rendered for plaintiff in the sum of $3,475, but before appeal was perfected, a remittitur of $1,192.05 was filed, reducing the judgment to $2,282.95, and the record is before us for review.

We approve all findings of the jury on fact issues, and adopt the same as our conclusions.

■ Defendant contends that the ordinances hereinbefore set out are unconstitutional and void, the insistence being that a municipal corporation possesses only such powers as are delegated; that the home rule amendment to the Constitution recognizes this rule by the provision that no charter or any ordinance passed thereunder shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature (section 5, art. 11, of the Constitution); that as the common law furnishes the rule of decision, liability, if at all, must rest upon failure to exercise ordinary care; that no absolute duty rested upon the motorman to stop the street car in the shortest time and space possible, nor was he required to do more than to exercise ordinary care under the circumstances; therefore, the ordinances relied upon by plaintiff being in conflict with the common law in these respects, are void.

The authority of the city to safeguard the life, limb, and property of its people by regulating the use of its streets by street railway companies and others, resides in its police powers granted by constitutional provision and statutory enactments. In connection with the home rule amendment, section 5, art. 11, of the Constitution, referred to above, attention is directed to grants of power to cities of the class to which Dallas belongs, found in article 1175, R. S. 1925. Section 12 of this article grants power: "To prohibit the use of any street, alley, highway or grounds of the city by any telegraph, telephone, electric light, street railway, interurban railway, steam railway, gas company, or any other character of public utility without first obtaining the consent of the governing authorities expressed by ordinance * * * and upon such condition as may be provided by any such ordinance. To determine, fix and regulate the charges, fares or rates of any person, firm or corporation enjoying or that may enjoy the franchise or exercising any other public privilege in said city and to prescribe the kind of service to be furnished by such person, firm or corporation, and the manner in which it shall be rendered, and from time to time alter or change such rules, regulations and compensation. * * *" Section 16, in part, reads: "To

have exclusive dominion, control, and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards, and public grounds of such city and to provide for the improvement of any public street, alleys, highways, avenues or boulevards by paving, raising, grading, filling or otherwise improving the same * * * and provided further, that all street railways, steam railways, or other railways, shall pay the cost of improving the said street between the rails and tracks of any such railway companies and for two feet on each side thereof. * * *" Section 34 of said article reads: "To enforce all ordinances necessary to protect health, life and property, and to prevent and summarily abate and remove all nuisances and to preserve and enforce the good government, order and security of the city and its inhabitants."

Article 1176 provides that, "The enumeration of powers hereinabove made shall never be construed to preclude, by implication or otherwise, any such city from exercising the powers incident to the enjoyment of local self-government, provided that such powers shall not be inhibited by the State Constitution."

Article 1181 provides that, "No charter or any amendment thereof framed or adopted under this charter, shall ever grant to any person, firm or corporation any right or franchise to use or occupy the public streets, avenues, alleys or grounds of any such city, but the governing authority of any such city shall have the exclusive power and authority to make any such grant of any such franchise or right to use and occupy the public streets, avenues, alleys, and grounds of the city. * * *"

■ The ordinances under consideration, having been passed by the city under constitutional and statutory authority, repealed the common law in all respects in which inconsistencies exist (City of Dallas v. Gill [Tex. Civ. App.] 199 S. W. 1144); but we find no real conflict in the two systems. While the duty of street railway companies, under the ordinances, is larger and extends to greater lengths than that required at common law under the same circumstances, yet they are of the same nature and not inconsistent. We are of opinion, therefore, that the ordinances must be sustained as valid enactments under powers given cities to establish, improve, and regulate the use of its streets, to regulate the operation of street railways, to prohibit all acts detrimental to public health, safety, and welfare, and to preserve and enforce good government, order, and security of the city and its inhabitants.

■ In view of the exclusive control given cities over their public streets by statute and the oft-repeated vindication of this power by courts, no serious contention can now be made

that the city of Dallas was without authority to require the street railway company to pave the space between· tracks and two feet on each side with material similar to that used in paving the streets, and to maintain the track rails on a level with the surface.

The "vigilant watch" ordinance is practically identical with an ordinance of the city of Gainesville that was upheld by the Supreme Court in Hays v. Gainesville, etc., Co., 70 Tex. 602, 8 S. W. 491, 492, 8 Am. St. Rep. 624, in an opinion by Judge Maltbie, who, among other things, said: "In the present instance, the ordinance under which appellee was incorporated made it the duty of the car-driver to keep a vigilant look out for all persons approaching the track, and to stop the car on the first appearance of danger; and a failure to perform this duty would of itself be an act of negligence. * * *" Again, in Dallas, etc., Co. v. Hurley, 10 Tex. Civ. App. 246, 31 S. W. 73, 75, this court, in an opinion by Judge Finley, approved the validity of a provision of the charter of the city of Dallas in legal effect the same as the ordinance under review. Ordinances prescribing rules for the guidance of operatives of street railways, adopted by cities, have been generally sustained by courts as valid enactments under granted police powers. The authority to enact "vigilant watch" and kindred ordinances that regulate the operation of steam and street cars, within corporate limits, is affirmed by McQuillan in the following language:

"Sec. 474. Within the police power, reasonable ordinances may be passed and enforced regulating the rate of speed at which cars propelled by steam, and street cars, whose motive power may be horse, mule, electricity or cable, may be run within the corporate limits; prohibiting trains and cars from obstructing streets; forbidding the use of steam in propelling trains in parts of the city; requiring a driver and conductor on each car, and servants of each train to give danger signals, as ringing of the bell while the locomotive is in motion; exacting of those who operate street cars to keep a vigilant watch for all vehicles and persons on foot, either on the track or moving towards it, and on the first appearance of danger to stop the car within the shortest space and time possible; compelling the use of fenders, lights on cars, and lights on railroad tracks; requiring the fencing or inclosing of tracks at certain points; providing reasonable regulations at crossings, as· safety railway gates, and flagmen or watchmen; compelling street car companies to adopt and use a particular kind of rail; to keep that part of the street between the rails clean; to remove snow, etc. from tracks; and to water tracks so as to lay the dust. Ordinance may also require cars to be run at specified times, regulate street railway transfers, and compel street railway companies to report to city officers at stated times."

Ordinances similar to, and in some cases identical with, the "vigilant watch" ordinance under consideration, were sustained in the following cases: Memphis Street Railway Co. v. Haynes, 112 Tenn. 712, 81 S. W. 374; Driscoll v. Market, etc., Co., 97 Cal. 553, 32 P. 591, 592, 33 Am. St. Rep. 203; Osborne v. McMasters, 40 Minn. 103, 41 N. W. 543, 12 Am. St. Rep. 698; Omaha St. Ry. Co. v. Duvall, 40 Neb. 29, 58 N. W. 531; Meyers v. St. Louis, etc., Co., 99 Mo. App. 363, 73 S. W. 379; Sepetowski v. St. Louis, etc., Co., 102 Mo. App. 110, 76 S. W. 693, 696; Sluder v. St. Louis, etc., Co., 189 Mo. 107, 88 S. W. 648, 5 L. R. A. (N. S.) 186; State ex rel. Vogt v. Reynolds, 295 Mo. 375, 244 S. W. 929; Grossman v. Wells, 314 Mo. 158, 282 S. W. 710, 714.

■ We therefore hold that these ordinances are valid; that the violation of same, as found by the jury, was negligence per se and proximate causes of the injuries to person and property suffered by plaintiff, entitling him to sue for and recover his damages in the premises.

But aside from negligence per se, arising under ordinances, defendant's liability may also rest on findings convicting it of violating its common-law duty, as follows: On the discovered peril issue; that the street car was operated at a negligent rate of speed; that a proper look out for automobiles was not maintained; that the motorman negligently abandoned the controls of the car and failed to apply brakes just prior to the collision; and that each such act of negligence was a proximate cause. Defendant's liability therefor may be rested, not only on negligence per se, but on negligence arising from breach of Common Law duty.

■ The court submitted to the jury issue No. 1, as follows: "Do you find from a preponderance of the evidence that defendant's servant failed to keep a vigilant watch on the occasion in question for plaintiff's automobile when it was on the street car track?" Also issue No. 4, as follows: "Do you find from a preponderance of the evidence that defendant's employee, in charge of its car, after the first appearance to him of the dangerous position of plaintiff, if you have so found, failed to stop the car in the shortest time and space possible?"

Defendant excepted to these submissions because the phrase "vigilant watch," contained in the first issue, and the phrase "shortest time and space possible," contained in the fourth issue, were not defined; the contention is that they are vague, indefinite, ambiguous, and uncertain, therefore should have been defined.

The pertinent statute is article 2189, R. S. 1925, reading in part as follows: "* * *

In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues. * * *" In Robertson v. Holden, 1 S.W.(2d) 570, the Commission of Appeals, after quoting this statute, said: "In the nature of things, the statute has not attempted to declare what 'legal terms' shall be explained or defined further than 'shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.' Reasonable necessity, considering the term or terms used, then, should be the test. Ordinary words of simple meaning, of course, need not be defined. But those terms which in law have a distinct fixed meaning which an ordinary person would not readily understand should, upon proper request, be defined. This is recognized in the universal practice in negligence cases of the giving of a definition of such terms as 'ordinary care,' 'negligence,' 'proximate cause,' 'unavoidable accident,' and the like. * * *"

Trial judges are not required to explain or define other than such legal terms as may be employed in submitting special issues and this requirement is not mandatory, unless in the particular case a definition or explanation is necessary to enable the jury to properly pass upon and render a verdict on the issue submitted. The words composing the phrases under consideration are in common use, simple, readily understood, and are without distinct or fixed legal meaning. Defendant does not so contend, but insists that they are vague, indefinite, ambiguous, and uncertain, and therefore should have been explained or defined. However, as the statute only requires the explanation or definition of "legal terms" when necessary to a correct understanding of the issue, we are not in favor of extending the rule, for such could only result in confusion.

Defendant complains that certain arguments of plaintiff's counsel were off the record, prejudicial, and harmful; and, in other respects, was an attempt by counsel to instruct the jury as to the effect of their findings.

At one place in the argument, counsel for plaintiff said: "What is the condition of these tracks and that pavement there (referring to the condition of the tracks and pavement where the collision took place)? It shows that the street is paved with concrete or some character of asphalt that the track on each side is paved with wooden blocks. Everyone of you gentlemen know what wooden blocks are. It is a pavement that is almost obsolete; a pavement that almost cut the viaduct in two (referring to the viaduct across the Trinity River between Oak Cliff and the City of Dallas proper)." The statement that the wooden block pavement "almost cut the viaduct in two" was off the record and should not have been made, but its effect, in our opinion, was negligible and harmless.

Counsel also said: "Did you ever hear of one (automobile) hanging with the front wheel (that is, in turning off the track)? Of course, they got the front wheels off the track and it held them there while this motorman sat on the seat either looking back talking to this young woman, or doing something that he had no business doing." The contention is that the record contradicts the statement that the motorman was looking back and talking to a young woman, or doing something he had no business doing.

The evidence supports these conclusions: That at the time the automobile was struck, its front wheels were off the track, the back wheel or wheels were hanging on the rail, and the car was skidding, that the street car was being operated at an excessive rate of speed, no bell was rung or gong sounded, that the motorman had abandoned the controls and failed to apply the brakes, and that the collision was with such force as to wreck the automobile, seriously injure the street car at the point of contact, killed plaintiff's brother, who was at the wheel, and injured the other occupants. While there was no direct evidence that the motorman was looking back talking to a young woman, the testimony was sufficient to show that he was doing something he had no business doing, and a witness for defendant, J. C. Bates, testified on cross-examination: "I do not know whether he (the motorman) looked back and smiled at some of the passengers as he was driving on down the street from Gordon Street to the place of the collision. I think that there was some few words exchanged between the motorman of the street car and some of the passengers that got on the car, but I do not know what he said to them, or what the passengers said to him."

We are of opinion that the argument of counsel in the respect mentioned above, as well as in respects not mentioned, was fairly based on evidence and legitimate deductions.

It is only where counsel wanders entirely from the record that the rule is violated, but when fairly based on evidence, it can never be correctly said that, in law, the argument is prejudicial. This doctrine is stated in 2 R. C. L. 427, § 26, as follows: "Hence, it is the rule that what is proven by direct testimony or is fairly inferable from facts and circumstances proved, and which has a bearing upon the issues, may be fair subject for comment by counsel, and if such deductions or inferences tend to fix upon a defendant the wickedness of the crime charged against him, it is within the scope of proper and fair argument to denounce him accordingly."

We therefore hold, in view of the entire record, that the arguments complained of were fairly based on evidence and legitimate inferences, except in the instance above mentioned, and in that respect was without harmful effect.

█ But defendant also contends that, in argument, counsel made a repeated and sustained effort to instruct the jury as to the effect of their findings. The court submitted altogether 61 special issues, the first 20 relating to plaintiff's liability, Nos. 21, 22, and 23 relating to the damage, No. 55 requiring the jury to answer whether the collision "did not result from an accident," and the remainder were on different phases of contributory negligence.

Counsel for plaintiff argued that the jury should answer the first 20 issues "yes," that No. 55, presenting the issue of accident, should be answered "yes," and that all defensive issues should be answered "no." In this connection, counsel repeatedly appealed to the evidence as justifying these conclusions, and at one point said, "Not because I say so, but because that is what the testimony in the case shows."

Plaintiff alleged different grounds as bases of recovery, defendant presented different issues in defense, relevant evidence was introduced by the parties in support of their respective contentions, and the issues were given further prominence by questions requiring the jury to answer as they found the facts from a preponderance of the evidence. We think counsel was permitted, after marshaling around the issues relevant evidence, to draw his own conclusions and insist that the jury should give answers favorable to his client; otherwise the argument would prove inconclusive and pointless. We do not think counsel should enjoy less freedom in discussing a case submitted on special issues than is accorded without question in cases submitted on general charges. We hold that the argument was proper, therefore overrule all propositions and assignments relating to this matter.

█ Defendant insists further that the court erred in submitting issue No. 23 and in entering judgment on the answer of the jury thereto. This issue is as follows: "What was the difference in the market value of plaintiff's automobile prior to said collision and the market value, if any, of same just after the collision"? The jury answered, "$975." The contention urged is that the pleading was not sufficient to authorize its submission and further that the evidence as to market value was insufficient.

Plaintiff alleged that the automobile was of the reasonable value of $1,400 prior to the collision, and that it was totally demolished by the collision. In support of this issue, he testified: "I am familiar with the value of cars of that kind. It was a 1928 Oakland Coupe and I believe I am familiar with the value of that kind of a car. They offered me $1050 'trade in' for this car on a new automobile. The car was a total wreck. I got $75 for it." Mr. Hanna, a witness for plaintiff, testified that he saw the automobile after the collision and that it was totally demolished. A photograph, taken after the collision, shows conclusively that the automobile, as a vehicle, was destroyed and that its remains could have only a junk value. The record fails to disclose that defendant either objected or offered evidence in rebuttal. We therefore hold that the pleading was sufficient to authorize the submission and that the evidence sustains the verdict. See St. Louis, etc., Co. v. Price (Tex. Civ. App.) 244 S. W. 642; Fort Worth, etc., Co. v. Tomson (Tex. Civ. App.) 250 S. W. 747.

Discovering no reversible error, after a careful consideration of all assignments and propositions, the judgment below is affirmed.

Affirmed.

---

*Writ of error granted.